[No. 4086–1–III.  Division Three.  April 15, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN BLAKE MOUNSEY, *Appellant.*

512

*Robert B. Henderson, Constance D. Gould,* and *Anderson, Evans, Craven, Lackie & Henderson,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Allen Gauper, Deputy,* for respondent.

MUNSON, J.—John Blake Mounsey appeals his convictions for second degree burglary and third degree rape. We affirm.

The complainant in this case was a 21–year–old college student who lived alone in an apartment in Cheney, Washington. On the night of July 30, 1979, she left work, walked home and visited a neighbor. She then returned home and fixed her own dinner. A little later, a friend came to visit. After the two talked and drank some wine, the friend left. At about 10 p.m., the complainant went to bed.

Meanwhile, Mounsey and Tim Riley went to visit a girlfriend of Riley's who lived in the same apartment building as the complainant. The three went to a tavern and returned at 2 a.m. At the apartment, Mounsey began to feel awkward, believing he was interfering with Riley and his girlfriend. The girlfriend suggested Mounsey visit the complainant, telling him the complainant did not mind male visitors at any hour of the night. Based upon these assurances, Mounsey departed for her apartment. After knocking on her door and hearing no answer, he left, but was further encouraged by Riley and his girlfriend to return after 3 or 4 minutes. Mounsey returned to the complainant's door and knocked. He then noticed an open window, left the porch, went to the window and called through the screen. He claims he heard the complainant say "Yes, come in". He told her through the window that the door was locked and to please come open the door. When nothing happened, he assumed that meant he could come in through the window. He pulled off the screen and stepped inside the room. The complainant testified she woke up to someone holding her arm; she was told to be quiet. From this point on, the parties' stories diverge significantly.

The complainant indicates Mounsey awakened her; she asked for her bathrobe and put it on. He displayed a short knife. After they sat in bed and talked, she stated he pulled

off her robe and raped her twice. In between, he smoked and for a period of 15 minutes sat on her back. As Mounsey prepared to rape her a third time, she complained of being sore. The complainant said she saw him take something out of his pocket and put it on himself to act as a lubricant; the third rape followed. Later, Mounsey exited the apartment.

Mounsey states that after entering through the window, he reached out and touched the complainant, who expressed surprise on seeing him. She asked what he was doing there; he responded he thought she knew he was in the room. She asked for her bathrobe, put it on, and came out into the kitchen where the two drank some wine and then went into the living room and talked for awhile. Mounsey said the complainant later changed into a night-gown and, after some discussion, took time to insert a diaphragm before they engaged in sexual intercourse three times. Then Mounsey left.

Riley and his girlfriend attempted to corroborate Mounsey's testimony. Riley indicated that after Mounsey left the girlfriend's apartment the second time, they began to worry about him. They went out to check the car to see where Mounsey had gone. At that time, the lights were off in the complainant's apartment. Later, Riley and his girlfriend went up the stairs to check the complainant's apartment and claim they saw the lights on, could hear conversation and could see both Mounsey and the complainant sitting in the living room conversing. The conversation appeared casual and the complainant was heard talking. Riley said he went to check again later, but the lights were off so he went back to his girlfriend's apartment, where he spent the night on the couch. However, the police performed experiments which suggested it would be impossible to see the living room window from the location described by Riley, indicating that the parties would not have been able to see into complainant's living room.

Mounsey met Riley at 6:30 a.m., and the two drove back

to Spokane in Mounsey's car.[1] Meanwhile, the complainant called a friend and told him her apartment had been broken into; the complainant then called the police and told them the same. A policewoman came to the apartment and asked the complainant if she had been raped; she said yes. The complainant was taken to the Cheney Medical Center and there she complained of soreness in her lower back and hips. The examining physician's assistant found a redness or soreness in the vaginal area and some substance on the vaginal wall. This substance might have been the type of spermicidal cream the complainant was known to have had at her apartment for use with a diaphragm. At police instruction, several secretion tests were taken. However, an insufficient number were taken to enable the laboratory which ultimately tested the sample to determine whether a contraceptive spermicidal cream was present. All the samples were consumed in the test for sperm.

Several witnesses testified regarding the condition of the screen on the complainant's window. Her landlord thought it was solid, but after the incident, he found it had been removed and indicated the screen could be pulled out of the window without any tools and there were no significant signs of prying or scratching on this particular screen.

At trial, Mounsey admitted to entering the apartment through the window and admitted to having sexual intercourse with the complainant. He denied, however, that these were nonconsensual. Mounsey contended he never owned a knife and denied he had ever possessed any type of lubricant which could have been used as suggested by the complainant. Several character witnesses were called who said Mounsey never owned a knife and never carried lubricants. There was conflicting testimony regarding prior inconsistent statements both by Mounsey and the complainant. Ultimately, although Mounsey was charged with

---

[1]The next day, Riley asked if Mounsey thought he could get in trouble for going in through the window, but Mounsey responded it was at the behest of the young lady.

first degree rape and first degree burglary, he was found guilty of third degree rape and second degree burglary. Mounsey raises several issues on appeal.

## I
### FAILURE TO PRESERVE SECRETION SAMPLES

■ Mounsey attacks the State's failure to preserve sufficient secretion samples to determine whether a vaginal spermicidal contraceptive had been used by the complainant. This evidence could have a direct bearing on Mounsey's testimony that his relations with the complainant were consensual. The State argues it has no duty to discover evidence on behalf of the defendant; in this conclusion we agree. The State has a duty to preserve potentially exculpatory evidence which is material to the defense. *State v. Wright,* 87 Wn.2d 783, 786, 557 P.2d 1 (1976). Where the parties do not know whether evidence is material, the prosecution has a duty to preserve evidence in general when there is a "reasonable possibility" that the destroyed evidence could favor the defendant. *State v. Pennewell,* 23 Wn. App. 777, 784, 598 P.2d 748 (1979); *State v. Johnson,* 23 Wn. App. 605, 609, 596 P.2d 1047 (1979). But as noted in *State v. Hall,* 22 Wn. App. 862, 866–67, 593 P.2d 554 (1979):

> This rule, however, has not been interpreted to require police or other investigators to search for exculpatory evidence, conduct tests, or exhaustively pursue every angle on a case.

*See also State v. Renfro,* 28 Wn. App. 248, 622 P.2d 1295 (1981); *State v. Canaday,* 90 Wn.2d 808, 585 P.2d 1185 (1978).

Here, there is some disparity between the facts presented to the court in the trial record and the facts as argued before this court. We base our decision upon the record: the record indicates the complainant was taken to a medical center where she was examined by a physician's assistant who took several secretion samples which were consumed in testing for sperm. The physician's assistant took no other

test. The record is silent as to whether he was asked to take other samples and whether he advised the police of the presence of the white creamy substance found in the complainant's vagina. The record is unclear whether the police were even aware of the substance then or if it came to their attention later. At that time the assailant had not been identified and the investigation was being carried on in a routine fashion. There was nothing present to suggest the police should vary their routine. Apparently the physician's assistant did not realize the purported importance of a "white creamy substance", nor did the police. We conclude no reversible error occurred.

## II
### SECOND DEGREE CRIMINAL TRESPASS

Mounsey argues that he should have been given an instruction regarding second degree criminal trespass as a lesser included offense to first degree burglary. We disagree. A defendant is entitled to an instruction on a lesser included offense where two conditions are met: (1) every element of the lesser offense must be a part of the greater offense, *State v. Roybal*, 82 Wn.2d 577, 512 P.2d 718 (1973); and (2) there must be evidence in the record to support the granting of an instruction. *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978); *State v. Collins*, 30 Wn. App. 1, 632 P.2d 68 (1981).

First degree burglary (RCW 9A.52.020) requires the following elements: The actor must, with intent to commit a crime, enter or remain unlawfully in any dwelling and either be armed with a deadly weapon or assault someone therein. First degree criminal trespass (RCW 9A.52.070) requires the actor to knowingly enter or remain unlawfully in a building. Second degree criminal trespass (RCW 9A.52.080) requires the actor to knowingly enter or remain upon the premises of another in a situation not amounting to first degree criminal trespass.

Since buildings and dwellings are equivalent under RCW 9A.04.110, first degree criminal trespass is a

lesser included offense of first degree burglary. But second degree criminal trespass is not, since second degree criminal trespass involves knowingly entering or remaining on premises in a situation which does not amount to first degree criminal trespass. Second degree criminal trespass then can apply only in situations where a person enters or remains unlawfully on premises other than a building, *i.e.,* open grounds, yards, etc. If a person knowingly enters or remains unlawfully in a building, he is guilty of first degree criminal trespass, which by definition cannot be second degree criminal trespass. Therefore, pursuant to *State v. Workman, supra,* Mounsey was not entitled to an instruction on second degree criminal trespass. He may have been entitled to an instruction on first degree criminal trespass; he did not request one and therefore may not raise that issue on appeal.

## III
### FAILURE OF A JUROR TO PROPERLY ANSWER VOIR DIRE

Members of the jury were asked whether any friend or relative had been the victim of any assault or rape or whether the jurors had known anyone who had been charged in that matter. One juror answered in the negative, but it was later brought to the court's attention that this juror's daughter might have been the victim of indecent liberties sometime in the past. Mounsey argues that had the juror answered correctly, she would have been challenged peremptorily. It is true that if a juror who would have been challenged peremptorily is asked a question and answers wrongly, the defendant should normally be given a new trial. *Smith v. Kent,* 11 Wn. App. 439, 523 P.2d 446 (1974). However, here the error was occasioned by the ambiguity of the question posed by the defense. There has been no showing the answer was untruthful or even evasive, but was instead fully responsive to the question asked, "have you had any friend or relative who has been the victim of any *assault or rape* or have you known anyone who

has been charged in that matter?" (Italics ours.) The record does not contain the factual basis for the indecent liberties charge, but it need not have been a crime of assault or a rape. The onus lay upon the defense to ask questions broad enough to elicit answers which would facilitate the proper selection of a jury. For example, the defense could have asked if the jurors knew anyone who had been involved in sex crimes. The defense also failed to establish for the court that the juror's daughter had in fact been the victim of indecent liberties.

A motion for a new trial rests in the sound discretion of the trial court. *State v. Lemieux,* 75 Wn.2d 89, 448 P.2d 943 (1968). We cannot say on this record that no reasonable person would have refused to grant a new trial. *State v. Huelett,* 92 Wn.2d 967, 969, 603 P.2d 1258 (1979). There was no error.

## IV
### OPERATION OF THE RAPE SHIELD STATUTE
#### A
##### SUPPRESSION OF EVIDENCE OF PRIOR SEXUAL CONDUCT

Mounsey argues that the operation of the rape shield statute, RCW 9A.44.020(3), deprives him of his Sixth Amendment right of confrontation. That statute states:

(3) In any prosecution for the crime of rape or for an attempt to commit, or an assault with an intent to commit any such crime evidence of the victim's past sexual behavior including but not limited to the victim's marital behavior, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is not admissible if offered to attack the credibility of the victim and is admissible on the issue of consent only pursuant to the following procedure:

(a) A written pretrial motion shall be made by the defendant to the court and prosecutor stating that the defense has an offer of proof of the relevancy of evidence of the past sexual behavior of the victim proposed to be presented and its relevancy on the issue of the consent of the victim.

(b) The written motion shall be accompanied by an affidavit or affidavits in which the offer of proof shall be stated.

(c) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and the hearing shall be closed except to the necessary witnesses, the defendant, counsel, and those who have a direct interest in the case or in the work of the court.

(d) At the conclusion of the hearing, if the court finds that the evidence proposed to be offered by the defendant regarding the past sexual behavior of the victim is relevant to the issue of the victim's consent; is not inadmissible because its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice; and that its exclusion would result in denial of substantial justice to the defendant; the court shall make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court.

Mounsey sought to introduce into evidence a psychologist's report relating to the complainant's past sexual history. The report suggested that when the complainant drank she became freely available to men and engaged in rape fantasies. The report also suggested she frequently had sexual relations with men but was remorseful afterwards, she tended to be dependent and had gone through several impermanent relationships. The court properly refused to allow any of this testimony before the jury.

In general, a decision of a trial court involving balancing of policies and priorities is a discretionary matter. *State v. Blum,* 17 Wn. App. 37, 56, 561 P.2d 226 (1977). The trial court abuses its discretion when no reasonable person would have taken the action followed by the trial court. *State v. Huelett, supra.* Applying the rape shield law, the court exercises discretion as to relevant evidence by weighing the probative value of the evidence against the probability that it will cause undue prejudice. RCW 9A.44.020(3).

In *State v. Kalamarski,* 27 Wn. App. 787, 620 P.2d

1017 (1980) (McInturff, J., dissenting), this court upheld exclusion of evidence in a rape case where consent was an issue. The evidence related to a single consensual act, 18 months earlier, between the victim and the defendant. There the trial court found the evidence to have been too remote to have application to the case before it. *Kalamarski* interpreted the rape shield law to require that the prejudice weighed by the trial court include both prejudice to the victim and prejudice to the defendant. In *State v. Hudlow*, 30 Wn. App. 503, 635 P.2d 1096 (1981), *review granted*, 97 Wn.2d 1001 (1982), Division Two of this court agreed with the trial court that various evidence of past sexual history was relevant to the issue of consent in a rape trial, but in reversing the denial of admissibility, held the probative value outweighed its prejudicial effect. The court allowed very general evidence regarding the victims' reputations as "loose women" to be admitted. *Hudlow*'s interpretation of the rape shield law required the court to weigh prejudice to the defendant, only, and not the victim, in determining admissibility. Here, we follow *State v. Kalamarski, supra* at 789:

> The statute allows such evidence only when the trial court determines its probative value outweighs the probability it will create a "substantial danger of undue prejudice," *either to the victim or the defendant.*

(Italics ours.)

▮ RCW 9A.44.020 precludes admitting evidence of past sexual conduct unless relevant to consent. Such conduct must bear substantial similarity to present conduct. Here the record sustains finding no such similarity;[2] the court did not abuse its discretion.

---

[2]Mounsey offered testimony by a psychologist who had never met the complainant. His report was based upon depositions and the word of acquaintances. He suggested the complainant tended to drink heavily, then "pick up" men in bars; but acted remorsefully after having sexual relations. Here she was not at a bar, nor was there evidence of excessive drinking. There was simply no similarity between what actually happened here and the tendencies attributed to the complainant.

## B

### Applicability of Rape Shield Law to the Burglary Charge

Mounsey argues that application of the rape shield law to evidence relating to the burglary charge violates due process. A critical element of burglary is that the actor have an intent to commit a crime upon entering a dwelling. RCW 9A.52.040 allows such intent to be inferred from the fact of illegal entry. Mounsey argues he did not intend a rape or any other crime upon entry; rather, he suggests he fully and reasonably expected to be welcomed, based upon what he had been told about the victim. He argues, however, that because of limitations imposed upon him by the rape shield law, the jury was deprived of critical testimony relating to his state of mind.

Insofar as the law was used to prevent evidence from being admitted regarding his state of mind on entry, we agree with Mounsey's position. The statute refers only to prosecutions for the crimes of rape or assault with intent to commit rape. By its own terms, the statute is inapplicable to a burglary charge. The policy of the rape shield law has no application to burglary since the evidence does not relate to the victim or to anything having to do with the victim, but rather to the state of mind of the defendant.

The problem here is whether the unadmitted evidence would have been sufficiently beneficial to Mounsey that he could claim to be prejudiced. Initially, Mounsey was not allowed to repeat what Riley's girlfriend had said to him.[3] However, when Riley's girlfriend took the stand, she testified she told Mounsey the victim was used to late night visitors and it would be okay for him to go see her. Riley was prevented from repeating this testimony, although he

---

[3]The testimony would have been proper pursuant to ER 801 and would not have been hearsay because it would have been intended to go to Mounsey's state of mind and not to stand for the truth of the matter stated, nor was it intended to prove the complainant's conduct pursuant to ER 404. For purposes of showing Mounsey's state of mind, it would not have mattered if the testimony was false, so long as it tended to prove what Mounsey was told.

did mention that his girlfriend had told Mounsey to go and that the complainant was used to late callers. What Mounsey sought to introduce was evidence of past sexual conduct and the testimony of a psychologist suggesting there was a good chance the complainant was fabricating the consent aspects of her story. None of this evidence went to Mounsey's state of mind. Nothing in the record suggests any evidence was refused which related to Mounsey's awareness of the complainant's personality or reputation before he went to her apartment. In fact, the record suggests that Mounsey knew nothing of the complainant other than what he was told by Riley's girlfriend minutes before he went to the complainant's apartment. Evidence of this knowledge was admitted on other grounds. Thus, while it would have been error to suppress such evidence based upon the rape shield statute, the record indicates no such suppression occurred and no prejudice has inured to Mounsey.

V

MUST THE STATE ELECT BETWEEN FIRST DEGREE RAPE AND FIRST DEGREE BURGLARY?

Mounsey argues the State could not charge both first degree rape and first degree burglary, but had to elect between the two. Mounsey was ultimately convicted for second degree burglary and third degree rape. First degree rape, RCW 9A.44.040, requires showing the actor had sexual relations with someone not his wife by forcible compulsion and where there was involved a deadly weapon, a kidnapping, a serious injury, or felonious entry to a building or vehicle where the victim was situated. First degree burglary, RCW 9A.52.020, requires a showing that the actor, with intent to commit a crime, entered or remained unlawfully in a dwelling and possessed a deadly weapon or assaulted someone therein.

We need not resolve that issue here; Mounsey was convicted of second degree burglary and third degree rape; there was no conviction for the supposedly merged offenses of first degree burglary and first degree rape. Second degree

burglary requires a showing of an unlawful entry with intent to commit a crime. Third degree rape requires a showing of nonconsensual intercourse not amounting to first or second degree rape. Burglary is a constituent element only of first degree rape since third degree rape explicitly excludes a finding of elements necessary for first degree rape. Thus, the jury made no inconsistent finding. We may presume from the verdict that the jury found Mounsey entered unlawfully with the intent to commit a third degree rape, a nonconsensual rape, but one not using force or violence. Any error which may have inhered in the failure to instruct the jury as to the merger of first degree rape and first degree burglary was harmless when the jury returned a verdict convicting Mounsey on the lesser included offenses.[4] Since Mounsey was not prejudiced, we find no due process violation. We further find no double jeopardy; the only inconsistencies occurred at the charging stage; and the crimes of which he was convicted had different elements. *See Brown v. Ohio,* 432 U.S. 161, 165, 53 L. Ed. 2d 187, 97 S. Ct. 2221, 2225 (1977).

## VI
### WHETHER THE STATE VIOLATED CrR 4.7[5]

Mounsey draws attention to three items in the State's case which he believes were in violation of CrR 4.7. Two of

---

[4]The jury could not have found second degree burglary and second degree rape at the same time. Second degree rape requires a finding of forcible compulsion. Second degree burglary requires that the party enter the building feloniously, which is an aggravating element that would have raised the conviction of second degree forcible rape to first degree rape. The only possible consistent findings in this case were third degree rape and second degree burglary.

[5]CrR 4.7 states in part:

"(a) Prosecutor's Obligations.

"(1) Except as otherwise provided by protective orders or as to matters not subject to disclosure, the prosecuting attorney shall disclose to the defendant the following material and information within his possession or control no later than the omnibus hearing:

"(i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with any written or recorded statements and the substance of any oral statements of such witnesses;

these were tests conducted at the scene to determine whether a person standing on the stairs outside of the complainant's apartment could see into the living room. The other was a pretrial statement by Tim Riley.

■ As to the tests, Mounsey did not object at trial. He therefore waived his objection on appeal. As to the State's failure to provide a copy of the statement by Tim Riley, the State is not in violation of CrR 4.7 because it did not intend to call Riley as a witness. Neither alleged violation was prejudicial since Mounsey was able to carry out a complete cross-examination both as to the tests and as to the Riley testimony. It should also be noted that the tests were of an exceptionally commonplace variety, that is, merely standing in the place suggested by witnesses to see if they were able to observe what they claimed to have observed in that location. We find no violation sufficient to warrant reversal.

## VII
### PREJUDICIAL STATEMENTS DURING CLOSING ARGUMENT

■ Mounsey argues that the prosecution acted improperly in its closing arguments. The test for determining prosecutorial misconduct was stated in *State v. Knapp,* 14 Wn. App. 101, 111, 540 P.2d 898 (1975), citing *State v. Adams,* 76 Wn.2d 650, 660, 458 P.2d 558 (1969), *rev'd on other grounds,* 403 U.S. 947, 29 L. Ed. 2d 855, 91 S. Ct. 2273 (1971):

> It is established that the constitutionally guaranteed fair trial requires a trial in which the attorney representing the state does not throw the prestige of his public office and the expression of his own opinion of guilt into the scales against the accused. Thus, any attempt to impress upon the jury the prosecuting attorney's personal belief in the defendant's guilt is unethical and prejudicial. *See State v. Case,* 49 Wn.2d 66, 298 P.2d 500 (1956),

---

" . . .

"(iv) any reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and scientific tests, experiments, or comparisons;"

and cases cited therein. Argument of counsel must be confined to the evidence and to fair and reasonable deductions to be drawn therefrom.

*State v. Adams, supra* at 660.

All the prosecutor's comments were objected to and stricken. Most of them dealt with the rights of rape victims. The impact of these statements is only significant if we were to accept Mounsey's argument that he was unable to effectively pursue his defense in light of the rape shield statute. Since we have suggested that the rape shield statute was properly applied insofar as it was used in this case, we must then view these statements in their own light. As such, they have little weight; Mounsey showed no prejudice, nor do we discern any probable prejudice from the statements; and therefore we decline to reverse on this basis.

None of Mounsey's arguments bear sufficient credibility to warrant reversal. We therefore affirm.

McINTURFF, C.J., and GREEN, J., concur.

Reconsideration denied May 21, 1982.

Review denied by Supreme Court August 27, 1982.