Paul M. **KVASNIKOFF**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 5588.

Court of Appeals of Alaska.

Dec. 9, 1983.

---

Thomas W. Findley, Findley & Brinkman, Juneau, for appellant.

Patrick J. Gullufsen, Dist. Atty., Wilson L. Condon, Atty. Gen., Juneau, for appellee.

## OPINION

Before COATS and SINGLETON, JJ., and BURKE, Chief Justice.*

BURKE, Chief Justice.

Paul Kvasnikoff was convicted of rape, under former AS 11.15.120.[1] At the time of the offense Kvasnikoff was an inmate at the Southeastern Correctional Center, near Juneau. His alleged victim, W.K., was a fellow inmate. According to W.K., Kvasnikoff forced him to perform an act of fellatio, then submit to an act of anal intercourse. Kvasnikoff's defense was based partly on the contention that W.K. consented to the acts complained of. Following entry of a final judgment, Kvasnikoff appealed.

Kvasnikoff asserts that evidence was excluded as a result of an erroneous application of AS 12.45.045. Kvasnikoff also asserts that the exclusion deprived him of his right to confront the complaining witness through effective cross-examination.

Kvasnikoff's first allegation of error requires us to examine Alaska's rape victim shield law, AS 12.45.045, in the context of a

---

* Burke, Chief Justice of the Supreme Court, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. Former AS 11.15.120 provided:

 (a) A person who (1) has carnal knowledge of another person, forcibly and against the will of the other person, or (2) being 16 years of age or older, carnally knows and abuses a person under 16 years of age, is guilty of rape.

 (b) A person who assists another to force or compel a third person to engage in a sexual act without consent is considered an accomplice to rape, irrespective of the legal status of that person with respect to the person forced or compelled to engage in a sexual act against his will.

 (c) For purposes of this section, the terms "carnal knowledge" and "sexual act" include sexual, oral and anal intercourse, with some penetration, however slight.

homosexual rape. AS 12.45.045 provides in part:

(a) In prosecutions for the crime of sexual assault ... evidence of the complaining witness' previous sexual conduct shall not be admitted nor reference made to it in the presence of the jury except as provided in this section. When the defendant seeks to admit the evidence for any purpose, he may apply for an order of the court at any time before or during the trial or preliminary hearing. After the application is made, the court shall conduct a hearing in camera to determine the admissibility of the evidence. If the court finds that the evidence offered by the defendant regarding the sexual conduct of the complaining witness is relevant and that the probative value of the evidence offered is not outweighed by the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the complaining witness, the court shall make an order stating what evidence may be introduced and the nature of the questions which shall be permitted ....

(b) In the absence of a persuasive showing to the contrary, evidence of the complaining witness' sexual conduct occurring more than one year before the date of the offense charged is presumed to be inadmissible under this section.

*See* Alaska Rule of Evidence 404(a)(2).

In accordance with AS 12.45.045 and Alaska Evidence Rule 404(a)(2), Kvasnikoff requested a hearing in camera wherein he informed the court that he would seek to introduce evidence of W.K.'s homosexuality as relevant to the issue of consent. Kvasnikoff asserted that proving W.K. had engaged or offered to engage in other homosexual acts would tend to show that W.K., acting in conformity therewith, consented to sexual intercourse with him on this occasion. Kvasnikoff also sought to use the

evidence to impeach W.K.'s credibility. He offered the following items of proof:

(1) Witness Mark Self would testify that he overheard W.K. offer sex in exchange for protection to an unnamed prison inmate less than twenty-four hours prior to the alleged rape.

(2) Witness Mark Self would testify that he saw W.K. rubbing the groin of an unnamed prison inmate several days before the alleged rape.

(3) Witness Don Stefan would testify that W.K. made a verbal agreement with him to engage in sexual acts, several weeks prior to the alleged rape.

(4) Witness Paul Dick would testify that W.K. asked him to engage in sex with him, over a year prior to the alleged rape.

(5) Witness Don Stefan would testify that W.K.'s reputation as a child at the Jesse Lee Home in Anchorage was one of a little boy who performed homosexual acts upon other little boys.

After reviewing the evidence and considering both the defense attorney's and prosecution's oral arguments, the trial judge concluded:

[T]he probative value of all of it, in my judgment is very weak. And it does not outweigh the probability that its admission would create confusion of the issues, confusion in the jury's mind as to whether they're trying Mr. W.K. for being a homosexual, or whether they're really looking at what happened on the night concerned. And I think it would create undue prejudice to the victim too. Because as I say it makes no difference what his sexual preference is, the question is what happened between him and the defendant on that night. So I will exclude all of the tendered evidence and any questions concerning it ....[2]

"A trial judge's ruling on the admissibility of evidence 'should be reversed only upon a showing of a clear abuse of discretion.'"

---

**2.** Later in the trial, after the court had made its ruling on the in camera motion, defense counsel brought up the matter a second time and indicated that Mark Self did know the name of the inmate whose groin had been rubbed. However, the trial judge maintained his posi-

tion that the probative value of the evidence was outweighed by the possibility of undue prejudice and confusion of the issues. He therefore refused to change his earlier ruling of exclusion.

*Eben v. State,* 599 P.2d 700, 710 (Alaska 1979); *quoting Newsom v. State,* 533 P.2d 904, 908 (Alaska 1975). We hold that exclusion of the evidence in this case did not violate the defendant's right to confront the witnesses against him, nor did the trial judge improperly apply the rape shield statute. We conclude, therefore, that the court did not abuse its discretion in excluding the evidence of W.K.'s prior sexual conduct.

Kvasnikoff argues that *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), is controlling. There, the United States Supreme Court held unconstitutional a statute which barred the introduction of relevant evidence of a juvenile witness' criminal record. The statute involved in this case, however, does not totally prohibit the introduction of relevant evidence of the victim's prior sexual conduct. Rather, the statute requires the trial judge to balance the probative value of the evidence against the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim. Only when its probative value is outweighed by other considerations will the evidence be excluded.[3] Therefore, *Davis* is not controlling.

 While a defendant may generally cross-examine and impugn the credibility of a witness, the right is not inviolate. In *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297, 309 (1973), the United States Supreme Court held that: "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." As stated in Tanford and Bocchino, *Rape Victim Shield Laws and the Sixth Amendment,* 128 U.Pa.L.Rev. 544, 560 (1980), "the validity of [state rape shield laws] must be tested against the traditional standard of admissibility: the sixth amendment guarantees that a criminal defendant will be able to introduce any evidence probative of a material issue, unless the probative value is outweighed by the prejudicial effect of the testimony." *See State v. Blue,* 225 Kan. 576, 592 P.2d 897, 901 (1979); *State v. Fortney,* 301 N.C. 31, 269 S.E.2d 110, 113 (1980). Therefore, Kvasnikoff's Sixth Amendment right to confront witnesses was not violated if the trial court properly concluded that the probative value of the evidence was outweighed by the possibility of undue prejudice, confusion of the issues or unnecessary invasion of the privacy of the victim. *Larson v. State,* 656 P.2d 571, 575 (Alaska App.1982).

The trial judge in this case had the difficult task of weighing the probative value of evidence which indicated that the defendant had engaged in other homosexual conduct, against the danger of undue prejudice, i.e., that the jury might presume consent simply as a result of their own prejudices or hostilities against homosexuals, and confusion of the issues.[4] The prosecution indicated that if the defense succeeded in getting the evidence admitted, it would support the character and credibility of W.K.

**3.** This test for admissibility is almost identical to that generally applied to all evidence under Alaska Rule of Evidence 403: "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury ...."

**4.** This process was explained in *State v. Hudlow,* 99 Wash.2d 1, 659 P.2d 514, 521 (1983), a case involving a shield law similar to Alaska's:

[T]he balancing process should focus not on potential prejudice and embarrassment to the complaining witnesses, but instead should look to potential prejudice to the truthfinding process itself. Rape shield statutes such as the one before us are, by their very nature, intended to minimize the embarrassment and humiliation to the prosecuting witness by limiting the introduction of evidence of prior sexual behavior. Thus, considerations of prejudice to the victim are built into the rape shield statute and further consideration of that factor may go too far in protecting the victim at the expense of defendant's right to a fair trial. The prejudice to the factfinding process itself must be considered to determine whether the introduction of the victim's past sexual conduct may confuse the issues, mislead the jury, or cause the jury to decide the case on an improper or emotional basis. In addition to legitimate state concerns in preserving the integrity of the truthfinding process, the statute requires the trial judge to consider the effect of excluding such evidence on defendant's right to a fair trial. Former RCW 9.79.150(3)(d). These considerations—the integrity of the truthfinding proc-

with its own witnesses. The trial judge in this case was understandably concerned that the main issue in the trial would become the sexuality of the victim rather than the conduct of the defendant on the occasion in question. In addition, the probative value of the evidence was diminished by the fact that none of it involved prior sexual conduct between W.K. and the defendant. Rather it involved conduct between W.K. and third persons.

Until recently, female victims of heterosexual rape suffered under a rule of relevancy which reflected the view that a woman who consented to sex with one individual was more likely to have consented to sex with another. This rule was finally rejected, when it was realized that such reasoning was "more a creature of a one-time male fantasy of the 'girls men date and the girls men marry' than one of logical inference." *People v. Blackburn,* 56 Cal.App.3d 685, 128 Cal.Rptr. 864, 867 (1976).[5] We see no reason to revert to such reasoning only because the sexual preference of the victim changes. A homosexual has no more or less free will than a heterosexual to engage in consensual sex with another individual.[6]

The decision in this case was a difficult and close one. We cannot say that it was arbitrary, capricious, manifestly unreason-

able or that it stemmed from an improper motive, *Tobeluk v. Lind,* 589 P.2d 873, 878 (Alaska 1979). We hold that the court did not abuse its discretion and find no violation of Kvasnikoff's right to confront witnesses.[7]

Kvasnikoff's second allegation of error is that the trial court erroneously admitted into evidence a letter that he wrote to Duane Buell, the assistant superintendent of the institution. He argues that the letter was obtained in violation of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

After the alleged rape, Kvasnikoff was removed from the prison dormitory and placed in a maximum security cell. The evidence indicates that Kvasnikoff requested and was denied an opportunity to speak with an attorney at this time. Later the same day, Kvasnikoff was interrogated by Trooper Glass of the Alaska State Troopers, after being advised of his rights according to *Miranda.* Statements made by Kvasnikoff during this interrogation were later suppressed, upon a finding by the trial court that there was no knowing and intelligent waiver of his *Miranda* rights. The basis of the court's ruling was that Kvasnikoff had not been made aware of the nature of the complaint against him.

---

ess and defendant's right to a fair trial—should be the factors considered by the trial court in exercising its discretion to admit or exclude the evidence. Further consideration of the impact of past sexual behavior evidence on the complaining witness ... should no longer be the standard for balancing the probative value of such evidence against its possibly prejudicial effect.

**5.** *See Milenkovic v. State,* 86 Wis.2d 272, 272 N.W.2d 320, 324 (1978) where the court found the idea that a woman's prior consent is *per se* relevant to the question of a later consent to be a "tired, insensitive, and archaic platitude of yesteryear."

**6.** Trial courts should focus on factors other than sexual preference in determining what evidence is relevant and has probative value with regard to the defense of consent. Evidence which tends to demonstrate past sexual conduct under circumstances which are substantially similar to the act now charged has greater probative value and relevancy. *See State v.*

*Mounsey,* 31 Wash.App. 511, 643 P.2d 892, 898 (1982). In the case at bar, although defense counsel did seek to admit evidence of sexual conduct which had occurred in a similar setting (in prison), that evidence was of relatively low probative value in that the individuals involved were unnamed third persons and the conduct did not involve acts which were substantially similar to those charged.

**7.** At trial, the defense argued that it should be allowed to use the evidence to impeach the credibility of the witness under Alaska Rule of Evidence 613, which permits use of prior inconsistent statements for the purpose of impeachment. However, since the trial court properly concluded that under AS 12.45.045 the evidence was inadmissible, the trial court's ruling that such impeachment would not be allowed is also affirmed.

On appeal, the defense argued for the first time that it should have been allowed to impeach the victim with the evidence so as to demonstrate his bias. This argument was waived by failure to raise it at trial.

Between the time he was interrogated by Trooper Glass and the appointment of counsel several days later, Kvasnikoff wrote to Buell.[8] In his letter he claimed innocence and accused the alleged victim of lying. The letter was admitted into evidence at trial, over objection by Kvasnikoff's attorney.

Because of the circumstances that existed when he wrote the letter, Kvasnikoff contends that the statements that it contained were coerced,[9] and not a product of a voluntary waiver of his *Miranda* rights.[10] According to Kvasnikoff,

> [s]ince the waiver must be an intentional relinquishment or abandonment of a known right or privilege, the Court should indulge every reasonable presumption against a waiver of constitutional rights. *Peterson v. State*, 562 P.2d 1350 (Alaska 1977), citing *Miranda*, 384 U.S. at 475 [86 S.Ct. at 1628]. The State did not meet its burden in demonstrating the voluntariness of the Defendant's statement, and it should have been suppressed.

We disagree.

■■■ As this court stated in *Eben v. State*, 599 P.2d at 707, "[b]oth *custody and*

*interrogation* must be involved in the procurement of an inculpatory statement by law enforcement officials before the standards enunciated in *Miranda* are applicable." (footnotes omitted, emphasis added). Interrogation is defined as "questioning initiated by law enforcement officers." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. Although Kvasnikoff was certainly in custody, it would be erroneous to equate the compulsion provided by his circumstances with the requirement of interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Kvasnikoff's statements in the letter were volunteered by him and not made in response to police questioning. The United States Supreme Court in *Miranda* made it clear that such volunteered statements may be used in evidence by the prosecutor without infringing on Fifth Amendment guarantees:

> There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. *Volunteered statements of any kind are not barred by the*

---

**8.** Kvasnikoff's letter was written on May 25, 1979.

**9.** Kvasnikoff argues:

> In the instant case, the defendant had been removed from the normal life of the prison and placed in a maximum security cell. He had been interrogated by a state trooper and had made statements which were ultimately suppressed by the Superior Court Judge. He had requested an attorney, and that request was denied. The coercion on the defendant was subtle but extremely effective. From talking with Trooper Glass he knew that a felony charge against him was under investigation. He had been denied counsel, had spoken to a policeman and was waiting in a maximum security cell for something to occur. It is clear that anything he said, either verbally or in writing, after that interview with the policeman was said with knowledge that the conversation had occurred. Without an attorney to assist him, he attempted to respond to the pressures upon him by writing a letter to the assistant superintendent.
>
> Ultimately, the Judge suppressed the statements made by the Defendant to the Trooper.

> However, between the time that the statement was made to the Trooper and the appointment of an attorney on June 4, the Defendant made additional statements. The statements were tainted by the conversation with the Trooper and they should have been suppressed.

**10.** In *McGinnis v. Stevens*, 543 P.2d 1221, 1235 (Alaska 1975), the Alaska Supreme Court recognized the "inherently coercive circumstances flowing from the interim imposition of specialized housing and suspension of other privileges," in a case involving the right to counsel in disciplinary proceedings against a prison inmate. The holding in *McGinnis*, however, was simply that an "inmate, who has been transferred to specialized housing pending decision by the district attorney regarding whether prosecution for felonious conduct will be undertaken must be afforded counsel at any appearance before the [prison] classification committee or at any related disciplinary hearing." *Id.* Thus, the proposition that it stands for is not relevant to the issue in the case at bar. The statements that we are concerned with here were not made at a hearing.

*Fifth Amendment and their admissibility is not affected by our holding today.* 384 U.S. at 478, 96 S.Ct. at 1630, 16 L.Ed.2d at 726 (emphasis added, footnote omitted).

The record supports the superior court's conclusion that the state met its burden of proving by a preponderance of the evidence that the statements contained in the letter were voluntary, since those statements were not made in response to questions asked by the police. We, therefore, hold that the superior court did not err in admitting the letter into evidence. *Rhode Island v. Innis,* 446 U.S. at 301, 100 S.Ct. at 1689–1690, 64 L.Ed.2d at 308.

The judgment of the superior court is AFFIRMED.

BRYNER, C.J., not participating.

COATS, Judge, dissenting.

The defendant in this case contended that the male complaining witness, W.K., had consented to sexual intercourse. According to his offer of proof, the defendant's theory of the case was that W.K. consented to sexual intercourse with him in return for his protection from other inmates and other favors.

In making his offer of proof Kvasnikoff conceded that generally in rape cases the complaining witness' prior sexual conduct is irrelevant. He argued that the usual rape case, however, involves a male defendant and a female complaining witness. In those cases the jury would almost certainly assume that the complaining witness would have a sexual interest in men. It would therefore be unnecessary and totally irrelevant to prove that a female complaining witness had prior consensual intercourse. However, in the instant case the defendant argued that unless the jury knew that the complaining witness was homosexual, the jury would likely assume that if the defendant had sexual intercourse with the complaining witness, the intercourse was not consensual. Since W.K. denied being homo-

sexual, Kvasnikoff wanted to attempt to establish that W.K. was homosexual and that W.K. was willing to trade sexual favors for protection. Kvasnikoff intended to establish this through testimony of other inmates who would testify to W.K.'s alleged recent homosexual behavior in jail, including testimony that W.K. offered another inmate sexual favors in return for that inmate's protection.

I agree with the majority opinion that the question in this case is whether the probative value of the evidence outweighs the prejudicial effect. I also agree that the decision on this matter is for the trial judge in the first instance and that his decision should be reversed only for an abuse of discretion. I also agree that there are strong policy arguments to protect witnesses from unnecessary inquiries into sexual matters. Witnesses may not wish to testify if they are faced with a searching inquiry into their prior sexual history. There are also the dangers that the time of the jury will be wasted by the exploration of irrelevant issues and that a jury may be biased against a complaining witness by the accusation that he is homosexual. Still, the defendant in a criminal trial has the right to fully defend his case and to cross examine the witnesses against him. This right is of such central importance that it is set forth as a constitutional right.[1]

I believe that the defendant's offer of proof shows that at least some of the evidence which he wished to introduce at trial was relevant to support his theory that W.K. consented to sexual intercourse in return for protection. However, there is still the issue of whether the probative value of this evidence outweighed the prejudicial effect. I would find that the trial judge abused his discretion in refusing to allow this testimony in a case where consent truly was an issue. Otherwise I think that the trial judge could properly exclude the evidence as being unduly prejudicial.

1. United States Const., Sixth Amendment and Fourteenth Amendment; Alaska Const. art. 1 § 11 and art. 1 § 7.

Unfortunately, the record on appeal in this case consists essentially of only the testimony of W.K. We don't even know whether Kvasnikoff testified, although it appears he may not have. Since this alleged rape took place in a dormitory of prisoners, I assume that there were many potential witnesses. Viewed in the context of the evidence which was available at trial, it may very well be that the evidence which Kvasnikoff wished to introduce was of limited probative value. The evidence concerning whether W.K. consented may have been so improbable in context that the trial judge could have concluded that consent was not truly in issue.[2] In that case the trial judge could conclude that the evidence concerning the alleged homosexual incidents was unduly prejudicial because it would serve to prejudice the jury against W.K. and would lead to a confusion of the issues. On the other hand, because the evidence concerning whether or not W.K. consented may have been ambiguous, the probative value of the evidence which Kvasnikoff wished to introduce may have been great. I would therefore order the record in this case to be supplemented so that we could determine whether the defense of consent was truly in issue in this case. If it was, I would reverse Kvasnikoff's conviction.

**2.** In arriving at this conclusion the trial judge would look at the evidence in the light most favorable to the defendant, considering the evidence presented at trial and considering the evidence which was the subject of the offer of proof.