Carl J. NAPOKA, Appellant,

v.

STATE of Alaska, Appellee.

No. A–6790.

Court of Appeals of Alaska.

Feb. 18, 2000.

Margi A. Mock, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## O P I N I O N

MANNHEIMER, Judge.

This case presents an issue under Alaska's rape shield law, AS 12.45.045. Carl J. Napoka was accused of sexually assaulting a teen-age girl. At his trial, Napoka tried to introduce evidence that he and the purported victim had repeatedly engaged in consensual sex in the past. The superior court ruled that this evidence was barred by the rape shield law. Having examined Napoka's offer of proof, we conclude that the offered evidence was admissible and that the superior court's ruling denied Napoka a fair trial.

*An overview of Alaska's rape shield law, AS 12.45.045*

AS 12.45.045 declares that, in prosecutions for sexual assault, "evidence of the [victim's] previous sexual conduct may not be admitted[,] nor may reference be made to it in the presence of the jury", except by order of the trial judge.[1] If a defendant wishes to introduce this type of evidence, the defendant must first apply to the trial judge.[2] The statute directs the trial judge to hear this matter *in camera*.[3] If the judge concludes "that evidence [of] the [victim's] sexual conduct is relevant, and that the probative value of [this] evidence ... is not outweighed by the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the complaining witness", then the judge shall issue an order "stating what evidence may be introduced and the nature of the questions that may be permitted."[4] The statute adds that "[i]n the absence of a persuasive showing to the contrary, evidence of the [victim's] sexual conduct occurring more than one year before the date of the offense charged is presumed to be inadmissible...."[5]

*The basic facts of this case*

On February 9, 1996, Alaska State Trooper Gary J. LaMotte spoke to the students at Tuluksak High School concerning sexual assault and sexual abuse. Shortly after he finished his presentation, a teacher contacted him and told him that a student wanted to report that she had been sexually abused. LaMotte had a short conversation with the student, fourteen-year-old N.A., but he had to leave to catch his plane. LaMotte returned to Tuluksak one month later to follow up on N.A.'s report. N.A. told Trooper LaMotte that Napoka had sexually assaulted her nine or ten times, and that the three most recent assaults had occurred approximately two years before, in the summer and fall of 1994.

LaMotte decided to focus his investigation on these three most recent assaults. He interviewed Napoka and asked him about N.A.'s allegations. Napoka ultimately told LaMotte that he had engaged in non-consensual sex with N.A. on the three occasions in mid–1994. He was subsequently indicted on three counts of first-degree sexual assault.[6]

*The defendant's offer of proof, the meaning of AS 12.45.045, and the trial judge's erroneous interpretation of this statute*

■ Just before opening statements at Napoka's trial, the prosecutor asked Superior Court Judge Dale O. Curda to exclude all evidence of the other six or seven sexual encounters between Napoka and N.A.. The prosecutor asserted that this evidence was barred by the rape shield law, AS 12.45.045.

Responding to the prosecutor's request for this protective order, Napoka's attorney argued that evidence of the prior sexual encounters was relevant to two disputed issues: (1) whether N.A. consented to the three charged incidents of sexual activity, and (2) if she did not, whether Napoka might have reasonably believed that N.A. was consenting to the sexual penetration.

1. *See* AS 12.45.045(a).

2. *See id.*

3. *See id.*

4. *Id.*

5. AS 12.45.045(b).

6. AS 11.41.410(a).

*Defense Attorney:* As to [past] sexual contact [between] the defendant and the victim, ... I certainly see it as relevant in this case. The allegation, according to the police report, is that [N.A.] and Mr. Napoka had sex some nine or ten times over the years [when] she was twelve, thirteen, and fourteen years old. And [one must] say that it [is] relevant [because], of course, there's going to be a question of consent in this case. People who have had sex [with each other] some ten times interact differently than people who have never had sex. And in order to show that this is a situation of consent, I certainly need to give the whole picture. . . . Mr. Napoka is entitled to a fair trial, and certainly [his] entire relationship from childhood onward with [N.A.] is relevant in this case.

. . .

[L]et me [be] clear to the court: [N.A.] doesn't say that she used to consent and she quit consenting. [According to] the police report, what she says is that all nine or ten times were exactly the same—exactly the same resistance, exactly the same non-consent, exactly the same [modus operandi], and exactly the same result: sexual penetration. [But we contend that] she is a woman who knows when she wants sex and when she doesn't want sex, and it's our position that she always wanted sex with Mr. Napoka.

. . .

[We] contend that [N.A.'s allegation that] each and every [past] instance [was] forcible is ... false[.] It is our contention that they had consensual sex[.] And to give the whole context [of their relationship] is the only way to show that [the sexual penetration alleged here] was not by way of force.

After hearing the defense's offer of proof, the prosecutor told Judge Curda that evidence of N.A.'s past sexual activity with Napoka should not be admitted even if it was relevant in the way that the defense attorney suggested. The prosecutor maintained that

the rape shield law, AS 12.45.045, barred the use of this evidence. The prosecutor asserted that under the statute, "[a]ny past sexual contact or conduct other than what [is alleged here] is deemed inadmissible."

The prosecutor based his position on the fact that AS 12.45.045(a) apparently draws no distinction between a victim's past sexual relations with the defendant and the victim's past sexual relations with other people. The statute simply declares that "evidence of the [victim's] previous sexual conduct may not be admitted".

To this extent, the wording of the statute may not precisely describe its purpose. But that purpose was clarified in *Jager v. State* [7], where this court discussed the meaning of AS 12.45.045 and the standard for admission of evidence under that statute.

In *Jager,* we rejected the contention that the rape shield statute excludes evidence of a victim's past sexual conduct even when that evidence is relevant to the issues being litigated at the defendant's trial. We clarified that the statute "does not prohibit the introduction of evidence of the victim's prior sexual conduct when that evidence is truly relevant." [8] The purpose of the statute, we explained, is to "guard[ ] against hasty and ill-considered admission of evidence that is only marginally relevant or truly irrelevant." [9]

■ The rape shield law prohibits evidence of a victim's sexual conduct when the "relevance" of this evidence rests on the impermissible inference that the victim is likely to have freely engaged in sexual relations with the defendant because the victim has freely engaged in sexual relations with other people. [10] As this court explained in *Kvasnikoff v. State:*

Until recently, female victims of heterosexual rape suffered under a rule of relevancy which reflected the view that a woman who consented to sex with one individual was more likely to have consented to sex with

7.  748 P.2d 1172 (Alaska App.1988).

8.  *Id.* at 1175.

9.  *Id.*

10.  *See Wood v. State,* 736 P.2d 363, 365 (Alaska App.1987).

another. This rule was finally rejected [in the rape shield law], when it was realized that such reasoning was "more a creature of ... male fantasy ... than one of logical inference."

674 P.2d 302, 306 (Alaska App.1983).[11]

Given this clarification of the rape shield law, it is obvious that the statute did not bar evidence of prior sexual activity between N.A. and Napoka. True, the statute requires the defendant to seek the court's permission before introducing *any* evidence of the victim's prior sexual activity. But this procedural safeguard is intentionally broad, ·intended to make sure that all evidence of the victim's past sexual conduct is screened before it is presented to the jury. In contrast, the rape shield statute's rule of exclusion is narrower. Like its cousin, Evidence Rule 404(b)(1), the rape shield statute bars specified evidence when that evidence is offered for a specific prohibited purpose.

Napoka's attorney tried to explain the flaw in the prosecutor's interpretation of the statute. The defense attorney pointed out that, even though the rape shield law may not explicitly distinguish between the victim's past conduct with the defendant and the victim's past conduct with other people, the statute is normally concerned with evidence of the victim's past sexual conduct with other people. The purpose of the statute, the defense attorney accurately noted, is to forestall the argument that the victim is promiscuous and therefore probably consented to have sex with the defendant.

*Defense Attorney:* [And] we don't have [that kind of] situation here[.] [W]e're not showing [N.A.'s] promiscuity. What we're showing is the specific relationship between the two of them [Napoka and N.A.]. And [the] probativeness [of this evidence], as I talked about [before], goes to consent[: what she] communicated to the defendant, and ... all the incidents of [their] sexual interaction[.] So I don't see any possibility of the rape shield law applying [to this] evidence.

. . .

*The Court:* Okay, so that I'm clear [on your argument]: What exactly are you offering the evidence for?

*Defense Attorney:* To show that, in fact, [N.A.] has been a consen[ting] and willing partner in the sexual activity [with Napoka], both as to the three times [alleged in the indictment] and the six or seven other times that she [told] the trooper about. To show that it was [all] in fact consen[sual], and to show that Mr. Napoka reasonably believed that there was consent in this case.

But the defense attorney's argument failed to convince the prosecutor. The prosecutor told the court:

*Prosecutor:* That's exactly the reason it doesn't come in [under the rape shield law. Prior instances of sexual conduct] don't come in unless [the evidence] overcomes the [presumptive] prejudice, the undue invasion of privacy.... It's absolutely irrelevant if she consented [to sexual activity with Napoka] before ... this time. We'[ve alleged] three incidents where she said "no", and she'll testify that she said "no". Whether she consented before, or after, doesn't make any difference [as to] what happened at the time [alleged in the indictment]."

Judge Curda ultimately adopted the prosecutor's position. In granting the State's request for the protective order, he declared:

*The Court:* The primary purpose of the rape shield statute is to the prevent the use of evidence [of the victim's] past sexual conduct as proof of the victim's current willingness to consent. And that [is] what [this evidence] is all headed toward. [So] therefore it is going to be excluded by the court.

Of course, [Evidence Rule] 404 [also] deals with character evidence. And [under that rule] a person's character at one time is not [admissible], whether it's the [character of the] defendant or a victim, to show that they acted the same way [on other] occasions. And that's ... another way of saying [that] this is what the rape shield law is intended to prevent happening. So

**11.** Quoting *People v. Blackburn,* 56 Cal.App.3d 685, 128 Cal.Rptr. 864, 867 (1976).

I'm going to go ahead on those bases to exclude [the evidence].

Having received this ruling, the defense attorney pointed out that the court had not addressed whether the evidence was relevant to show that Napoka might reasonably have believed that N.A. consented to the sexual activity. Judge Curda then rejected this second theory of admissibility:

> *Defense Attorney:* [T]he court did not address [my] second reason for [offering this evidence]—to show [Napoka's] own subjective belief in her consent [because] this [was] the exact same conduct all of those times.... I ought to be able to show that he subjectively and in good faith believed that this was [all] consensual contact between the two of them.

> *The Court:* I find that the [statute] covers that situation, too. [The evidence] is not to be used even for that purpose.

As is obvious from the foregoing discussion, we conclude that Judge Curda's ruling was error. Judge Curda adopted the prosecutor's interpretation of the rape shield statute—the view that the statute excludes evidence of the victim's prior sexual conduct even if that prior conduct is relevant. But, as explained above, the rape shield statute does not exclude relevant evidence.

N.A.'s prior sexual conduct with Napoka was clearly relevant to the two issues confronting the jury: (1) whether, as a factual matter, N.A. consented to have sex with Napoka on the three occasions identified in the indictment, and (2) whether, even if N.A. did not consent, Napoka nevertheless reasonably believed that she did consent (in other words, whether Napoka acted "recklessly" with respect to the fact that N.A. was not consenting to the sexual penetration). The disputed evidence was relevant, not because it showed that N.A. had engaged in sexual activity before, but rather because it showed that N.A. had engaged in sex *with Napoka* before. If, as the defense claimed in its offer of proof, Napoka and N.A. had a long history of consensual sex, this fact would obviously be important to the jury's proper decision of these two issues.

The relevance of the disputed evidence does not hinge on any inference concerning N.A.'s character. The evidence is important, not because of what little it may reveal about N.A.'s willingness to engage in sexual activity in general, but because of what it reveals about N.A.'s relationship with Napoka—specifically, her willingness to engage in sexual activity with Napoka—and how this might have influenced Napoka's perception of whether N.A. consented to the sexual activity during the three incidents charged in the indictment.

Judge Curda, by his ruling, excluded important evidence from Napoka's trial—evidence that was potentially exculpatory. For this reason, and for the additional reason described in the next section, we conclude that Napoka is entitled to a new trial.

### The later ruling that barred the testimony of Olga Alexie

Judge Curda's interpretation of the rape shield statute, and his concomitant decision to exclude all evidence of the six or seven prior sexual contacts between N.A. and Napoka, led to a second error later in Napoka's trial.

Obviously, the State's main contention at Napoka's trial was that N.A. had not consented to have sex with Napoka. But a secondary theme of the State's case, from the beginning of trial, was that N.A. had been so upset or embarrassed about her sexual relations with Napoka that she never told anyone about it until Trooper LaMotte gave his lecture at her school. In his opening statement to the jury, the prosecutor said:

> *Prosecutor:* You're going to [hear from N.A., who will] tell you about each and every one of those incidents, and how, on each and every one of those incidents, she told [Napoka] "No, I don't want you to do this, and if you do it again I'm going to tell people." It took [N.A.] a little while to tell people. It wasn't something that she was really proud of, and it wasn't something that she talked a great deal about. It wasn't until 1996, in March, when Trooper Gary LaMotte went to Tuluksak to give a talk at the school, that [N.A.] decided to

come forward with what had happened to her.

(N.A.'s testimony was actually a little different from the prosecutor's opening statement. N.A. testified that she told a friend about the sexual assault before she told Trooper LaMotte. But N.A. said that her conversation with this friend, like her conversation with Trooper LaMotte, occurred "months" after the incidents alleged in the indictment.)

During the defense case, Napoka's attorney called Olga Alexie to the stand. Ms. Alexie was twenty-three years old and an acquaintance of both Napoka and N.A.. The defense attorney wanted Alexie to describe a conversation she had had with N.A., but the prosecutor immediately objected that the proposed testimony was likely going to violate Judge Curda's earlier ruling excluding all evidence of N.A.'s prior sexual activity with Napoka. Judge Curda directed the defense attorney to make an offer of proof through *voir dire* examination of Alexie outside the presence of the jury.

Alexie testified that she and another friend, Eileen Peter, were at N.A.'s house in March or April 1993, *i.e.*, more than a year before the three incidents charged in the indictment. N.A. told Alexie that she might be pregnant by Napoka. N.A. was not crying when she said this, and N.A. never said anything about being raped or being forced to have sex. According to Alexie, N.A. "didn't sound upset, and she wasn't nervous or anything like that."

Arguing for the admission of this evidence, the defense attorney pointed out that Alexie's testimony was relevant for two purposes: first, to rebut the State's contention that N.A. was too upset or embarrassed to tell anyone about her sexual relations with Napoka until Trooper LaMotte's lecture; and second, to show that N.A. acted in a way that was inconsistent with her later claim of rape.

*Defense Attorney:* [Olga Alexie's account of this conversation] is certainly contradictory to what [N.A.] said yesterday about not having any conversations with anybody about her sex with [Napoka]— because she did talk to [Olga Alexie] about

being concerned that she was pregnant, [but] not about being raped[.]

*The Court:* What about the pregnancy?

*Defense Attorney:* Just a remark; there was no pregnancy that I'm aware of.... I'm not offering this to show [an actual] pregnancy, [but] to show her state of mind. Her state of mind wasn't the state of mind of a person who was raped. It was the state of mind of a person who had [had] consensual sex and her concern at that point was whether she might be pregnant. [T]his witness will say that [N.A.] was concerned about having had sex the day before ..., and that her concern was [that] she might be pregnant."

The prosecutor objected that Alexie's testimony would violate the protective order barring admission of evidence concerning any prior sexual relations between Napoka and N.A. except the three incidents named in the indictment. The prosecutor pointed out that because the incidents named in the indictment occurred in the summer and fall of 1994, Alexie's testimony about a conversation in the spring of 1993 could not be admissible under the court's protective order.

Judge Curda adopted the prosecutor's position and ruled that Olga Alexie's testimony was inadmissible:

*The Court:* The court made the original ruling under [AS] 12.45.045 regarding prior sexual contact between Mr. Napoka and the victim ..., and found that [their] consensual prior sexual contact *per se* could not be introduced to show that there may have been consent on the dates in question.... And in order for the defense to overcome the protective order and the rape shield act ..., the defense [must] tie [the offered evidence] specifically to [one of the three] specific instances [alleged in the indictment], which it hasn't ... done[.]

We conclude that this ruling was error. Alexie's testimony was clearly relevant on both of the issues identified by the defense attorney. If Alexie's testimony was believed, N.A. was not upset or embarrassed about her sexual relations with Napoka; she was simply concerned that these sexual relations might have resulted in a pregnancy. And if N.A. was not upset or embarrassed by her

sexual relations with Napoka, if she failed to mention anything about being forced to have sex, and if her only stated concern was that she might be pregnant, then this evidence was important to assessing whether the three incidents of sexual penetration named in the indictment were assaults or were consensual.

### Conclusion

The trial judge's erroneous interpretation of AS 12.45.045 caused him to make two rulings that excluded potentially important exculpatory evidence from Napoka's trial.

Because this excluded evidence might well have affected the jury's decision, we reverse Napoka's convictions and grant him a new trial.[12]

The judgement of the superior court is REVERSED.

---

**12.** See Love v. State, 457 P.2d 622, 629–631 (Alaska 1969) (evidentiary rulings constitute reversible error if they substantially affected the jury's consideration of the case).