**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
SUPREME COURT
STATE OF WASHINGTON
8/31/2022
BY ERIN L. LENNON
CLERK

# THE SUPREME COURT OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | **ORDER DENYING FURTHER** |
| | ) | **RECONSIDERATION** |
| Respondent, | ) | |
| | ) | No. 99850-7 |
| v. | ) | |
| | ) | |
| CRISTIAN LUPASTEAN, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

The Court considered the parties' "JOINT MOTION FOR RECONSIDERATION". The

Court entered an "ORDER AMENDING OPINION" in this case on August 30, 2022.

Now, therefore, it is hereby

ORDERED:

That further reconsideration is denied.

DATED at Olympia, Washington this 31st day of August, 2022.

For the Court

González, C.J.
CHIEF JUSTICE

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILED
SUPREME COURT
STATE OF WASHINGTON
8/30/2022
BY ERIN L. LENNON
CLERK

**IN THE SUPREME COURT OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>v.<br><br>CRISTIAN LUPASTEAN,<br><br>               Petitioner. | No. 99850-7<br><br>ORDER<br>AMENDING<br>OPINION |

It is hereby ordered that the majority opinion of Yu, J., filed July 28, 2022, in the above entitled case is amended as indicated below.

On page 34, line 7 of the slip opinion, after "Review at 7." delete "Rather than adequately brief the issue to this court, Lupastean has attempted to incorporate his Court of Appeals briefing by reference. See Suppl. Br. of Pet'r at 30. In general, "[w]e do not address issues based solely on incorporated arguments." *State v. Sublett*, 176 Wn.2d 58, 68 n.2, 292 P.3d 715 (2012) (C. Johnson, J., lead opinion); *see also* RAP 10.3(a)(6) (appellate briefs must include "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record"). Nevertheless, we briefly address Lupastean's claim that juror 6 was biased."

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Lupastean,* No. 99850-7 (order amending opinion)

DATED this 30th day of August, 2022.

_____
González C.J.
Chief Justice

APPROVED:

_____
Johnson, J.

_____

_____
Madsen, J.

_____
Yu, J.

_____
Owens, J.

_____
Montoya-Lewis, J.

_____
Stephens, J.

_____
Whitener, J.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JULY 28, 2022

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JULY 28, 2022

*Erin L. Lennon*
ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) ) ) | No. 99850-7 |
| Respondent, | ) ) |  |
| v. | ) ) | En Banc |
| CRISTIAN LUPASTEAN, | ) ) ) | Filed: July 28, 2022 |
| Petitioner. | ) ) |  |

YU, J. — This case provides us with the opportunity to reconcile our precedent regarding the role of peremptory challenges in jury trials with our precedent setting forth the appropriate remedies that follow from a juror's failure to disclose information during the jury selection process. Petitioner Cristian Lupastean was convicted by a jury of driving while license suspended (DWLS), driving a commercial vehicle without a valid commercial driver's license (CDL), and reckless driving. He seeks a new trial because one of the seated jurors failed to disclose information that was requested in voir dire. Lupastean contends the

*State v. Lupastean*, No. 99850-7

nondisclosure impaired his ability to intelligently exercise peremptory challenges and showed that the juror had actual and implied bias.

To evaluate Lupastean's claims, we must address a point of tension in our precedent. Some of our older opinions hold that a party's inability to intelligently exercise their peremptory challenges automatically requires a new trial, and no showing of prejudice is required to obtain relief on appeal. *State v. Simmons*, 59 Wn.2d 381, 390-92, 368 P.2d 378 (1962); *see also Robinson v. Safeway Stores, Inc.*, 113 Wn.2d 154, 160, 776 P.2d 676 (1989). However, our more recent precedent states that the party seeking a new trial based on juror nondisclosure must show that the undisclosed information "would have provided a valid basis for a challenge for cause." *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 267, 172 P.3d 335 (2007); *see also In re Pers. Restraint of Lord*, 123 Wn.2d 296, 313, 868 P.2d 835, *clarified by* 123 Wn.2d 737, 870 P.2d 964 (1994). We have never reconciled this tension. We do so now.

The law regarding peremptory challenges has changed substantially since our 1962 decision in *Simmons*. At that time, courts believed that peremptory challenges were so important that they took precedence over even the constitutional rights of criminal defendants. Since then, we have come to recognize that the nonconstitutional right to exercise peremptory challenges can and must be limited by courts, in a manner that would have been unthinkable when

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Simmons* was decided. Moreover, at the time of *Simmons*, precedent held that a party's inability to exercise one of their peremptory challenges was structural error automatically requiring a new trial. Both this court and the United States Supreme Court have since disavowed such precedent. Thus, over the past 60 years, "the legal underpinnings of our precedent have changed or disappeared altogether." *W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54, 66, 322 P.3d 1207 (2014).

There is no longer any legal basis to treat juror nondisclosure as inherently prejudicial error that automatically requires a new trial, and we disavow the portions of *Simmons* and *Robinson* indicating otherwise. In light of the current, limited role of peremptory challenges in Washington jury trials, we now hold that a motion for a mistrial or new trial may not be granted solely because undisclosed information about a juror might have triggered a peremptory challenge. Instead, juror nondisclosure must be treated similarly to other nonconstitutional errors that require a new trial only on an affirmative showing of prejudice. Such a showing may be made if the moving party shows that the undisclosed information would have supported a valid challenge for cause or that the nondisclosure was otherwise prejudicial to the moving party's right to a fair trial. Lupastean has not made the necessary showing here. We therefore affirm his convictions.

*State v. Lupastean*, No. 99850-7

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 27, 2018, a state trooper on I-90 in Adams County saw a commercial truck drive past and decided to pull it over for an inspection. The main issue to be resolved at trial was who was driving the truck—Lupastean, who did not have a valid CDL, or Erika Harvey, who did.

The trooper testified that he saw Lupastean driving the truck on the highway. However, while the trooper was signaling the truck to stop, he looked into the truck's mirror to see into the passenger area and saw Lupastean move out of the driver's seat. Then, "a blonde female jump[ed] into the driver's seat. And then shortly after that, the vehicle came to a stop." Clerk's Papers (CP) at 108. The "blonde female" was Harvey, who testified that Lupastean was not driving at any time that day. Harvey testified that she had been hired specifically because Lupastean could not drive without a CDL, and January 27, 2018 was her "first trip out." *Id.* at 154. Lupastean was with her to help maintain the truck and ensure that "nothing needs repair." *Id.* at 170.

On November 9, 2018, Lupastean was charged in Adams County District Court by third amended complaint with first degree DWLS, driving a commercial vehicle without a CDL, and reckless driving. His first trial ended in a mistrial when the jury could not unanimously agree on a verdict.

At voir dire for Lupastean's retrial, the court listed the charges and asked all the prospective jurors several questions. The jurors were asked to raise their hands if they would "answer yes or probably" to any question. *Id.* at 47. One of the questions was "Do any of you have a close friend or relative who has had experience with a similar or related type of case or incident? And that would be as a victim, witness, or accused." *Id.* at 49.

Three prospective jurors disclosed that people close to them had been involved in driving-related incidents. The court followed up with each one to determine whether their experiences would affect their ability to be fair in Lupastean's case. The court then asked if anyone else had "raised their hand in response to that question." *Id.* at 51. No one spoke, and the court recorded a "negative response from the other jurors." *Id.* The court moved on to its next general question, and voir dire continued. The parties exercised their for-cause and peremptory challenges, and a six-person jury was sworn with no alternates. The court gave the jury its initial instructions, then took a brief recess.

After the recess and outside the presence of the jury, Lupastean's counsel raised a concern about the person who was seated as juror 6. Counsel reported that during the recess, juror 6's husband had "approached" counsel, "asked if [counsel] was an attorney, and then proceeded to ask about an incident that he had been involved in with regards to getting hit by an unlicensed driver in an accident." *Id.*

5

*State v. Lupastean*, No. 99850-7

at 84. Juror 6 had not responded to the court's general voir dire question about having "a close friend or relative who has had experience with a similar or related type of case or incident." *Id.* at 49. The court brought juror 6 back in for individual questioning. She stated that her husband's accident "was about a month ago, but it didn't go to court." *Id.* at 85-86. When asked by the court, juror 6 stated that her husband's accident "wouldn't affect [her]," and that she "would be fair." *Id.* at 86.

Defense counsel asked follow-up questions about the accident. Juror 6 stated that her husband "was making a left turn and there was an oncoming car and it hit him," and "[t]he other driver didn't have his driver's license." *Id.* at 86-87. When asked why she had not responded to the court's general voir dire question, juror 6 stated that "since they didn't go to court and he just got a ticket, I don't know, I assumed it would be okay." *Id.* at 87. However, when directly asked by defense counsel, "Do you think that those are two similar incidences?" Juror 6 agreed, "Yeah, they're the same." *Id.* at 87-88. She also volunteered, "[W]hen he was asking that question I was thinking behind my head. I go, well, it didn't go to court, my husband didn't get a ticket. I assumed it would be okay, but I thought in my mind." *Id.* at 88.

The State then asked juror 6, "[I]t didn't seem similar to you, is that why you didn't raise it with us?" *Id.* at 89. Juror 6 agreed and confirmed that her husband's accident "didn't involve a truck, or reckless driving, or anything like that." *Id.*

After juror 6 left the room, Lupastean immediately moved to disqualify her and requested a mistrial. The State opposed Lupastean's motion. The court made oral findings that juror 6 "was not deliberately untruthful to try and get herself seated on this jury" and that "it doesn't sound like that's affecting her ability to be fair and impartial." *Id.* at 95. On the basis of those findings, the court denied Lupastean's motion in an oral ruling:

> "Information known during voir dire but not revealed upon request will be prejudicial if it is material and would have provided the objective basis needed to challenge for cause. It will not be prejudicial if no more is shown than that it might have affected how a party subjectively decided to exercise peremptory challenges."
>     . . . So, based on the case law and those findings, I'm going to deny the motion for new trial.

*Id.* at 95-96 (quoting *State v. Tigano*, 63 Wn. App. 336, 342, 818 P.2d 1369 (1991)).

Lupastean was convicted, and the Adams County Superior Court affirmed on appeal because juror 6's failure to disclose "was not dishonest." *Id.* at 229 (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984) (plurality opinion)). The Court of Appeals granted discretionary review and affirmed in an unpublished opinion. *State v. Lupastean*,

7

*State v. Lupastean*, No. 99850-7

No. 37394-1-III (Wash. Ct. App. May 6, 2021) (unpublished),

https://www.courts.wa.gov/opinions/pdf/373941_unp.pdf.

We granted Lupastean's petition for review and now affirm.

ISSUE

Is Lupastean entitled to a new trial due to juror 6's failure to disclose her

husband's car accident in voir dire?

ANALYSIS

A.      Background on jury selection and mistrials generally

To select a jury for a criminal case, "[a] voir dire examination shall be

conducted." CrRLJ 6.4(b).[1]  During voir dire, the court and counsel "ask the

prospective jurors questions touching their qualifications to serve as jurors in the

case." *Id.*  Voir dire is "conducted under oath" and "subject to the supervision of

the court as appropriate to the facts of the case." *Id.*  Voir dire has two purposes:

"discovering any basis for challenge for cause" and "gaining knowledge to enable

an intelligent exercise of peremptory challenges." *Id.*

Challenges for cause are governed by RCW 4.44.150 through 4.44.190. *Id.*

at CrRLJ(c)(2).  A juror may be challenged for cause only for specified reasons:

failure to meet the statutory qualifications for jury service, "[u]nsoundness" of

---

[1] We cite the Criminal Rules for Courts of Limited Jurisdiction because this is a criminal case originating in district court, but these rules are generally comparable to the superior court criminal rules, as well as the rules for civil cases. *See* CrR 6.4, 7.5; CR 47, 59; CRLJ 47, 59.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

mind or body, "implied" or "actual" bias, or on the basis of a disability that prevents the juror from serving in a "particular action." RCW 4.44.160, .170. Challenges for cause are exercised before peremptory challenges. CrRLJ 6.4(e)(2).

"A peremptory challenge is an objection to a juror for which there is no reason given." *Id.* at CrRLJ(e)(1). Nevertheless, as discussed further below, peremptory challenges can never be exercised on the basis of race. *State v. Jefferson*, 192 Wn.2d 225, 239, 429 P.3d 467 (2018) (Gordon McCloud, J., lead opinion). The right to exercise peremptory challenges "was adopted by Washington's first territorial legislature over 150 years ago." *State v. Saintcalle*, 178 Wn.2d 34, 52, 309 P.3d 326 (2013) (Wiggins, J., lead opinion), *abrogated on other grounds by City of Seattle v. Erickson*, 188 Wn.2d 721, 398 P.3d 1124 (2017); *see* LAWS OF 1854, ch. 12, §§ 102, 103, 186, at 118, 165. Today, peremptory challenges are governed primarily by court rule. CrRLJ 6.4(e); GR 37.

After the jury has reached its verdict, a defendant may move for a new trial "within 5 days." CrRLJ 7.5(b). Similarly, a mistrial may be declared before the verdict based on "a trial irregularity which significantly infringed on [the defendant's] right to a fair trial." *State v. Latham*, 100 Wn.2d 59, 62, 667 P.2d 56 (1983). Juror misconduct that does not "'inhere[ ] in the verdict'" is a recognized basis for granting a mistrial or new trial. *Long v. Brusco Tug & Barge, Inc.*, 185 Wn.2d 127, 131, 368 P.3d 478 (2016) (alteration in original) (quoting *Ayers v.*

*State v. Lupastean*, No. 99850-7

*Johnson & Johnson Baby Prods. Co.*, 117 Wn.2d 747, 768, 818 P.2d 1337 (1991));

*see also* CrRLJ 7.5(a)(2). To decide a new trial motion, the court must determine

whether "it affirmatively appears that a substantial right of the defendant was

materially affected." CrRLJ 7.5(a). Although the court's decision is discretionary,

a new trial is required if there has been a prejudicial irregularity that cannot be

remedied, such that "nothing short of a new trial can insure that the defendant will

be tried fairly." *State v. Gamble*, 168 Wn.2d 161, 177, 225 P.3d 973 (2010).

"'An order granting or denying a new trial will not be reversed except for an

abuse of discretion.'" *Robinson*, 113 Wn.2d at 158 (quoting *Coleman v. George*,

62 Wn.2d 840, 841, 384 P.2d 871 (1963)). "Findings of fact made by the district

court are accepted if they are supported by substantial evidence in the record."

*City of Richland v. Wakefield*, 186 Wn.2d 596, 605, 380 P.3d 459 (2016) (citing

RALJ 9.1(b)). However, the district court's "'rulings as to the law'" are reviewed

de novo. *Robinson*, 113 Wn.2d at 158 (quoting *Coleman*, 62 Wn.2d at 841); *see*

*also* RALJ 9.1(a).

B.    There is tension in our precedent as to when a party is entitled to a new trial
      based on juror nondisclosure during the jury selection process

It is well established that a juror commits "misconduct" warranting a new

trial if they answer "falsely on voir dire, concealing [their] bias." *Nelson v.*

*Placanica*, 33 Wn.2d 523, 529, 206 P.2d 296 (1949). This case asks whether a

mistrial may be granted in slightly different circumstances: where the juror did not

10

*State v. Lupastean*, No. 99850-7

intend to answer falsely, and the undisclosed information may have supported a peremptory challenge, but may not have supported a challenge for cause.

The Court of Appeals correctly described the current state of the law in this area as "discombobulated." *Lupastean*, No. 37394-1-III, slip op. at 14. There are, in effect, three lines of precedent addressing this issue: (1) the *Simmons* and *Robinson* line, (2) the *Lord* and *Elmore* line, and (3) the Court of Appeals line. Each line of precedent suggests a different legal analysis, creating significant tension in Washington law.

> 1. *Simmons* and *Robinson* require a new trial where a juror fails to disclose information that would support a peremptory challenge

In 1962, this court decided *Simmons*, a criminal case. 59 Wn.2d 381. There, a juror failed to disclose in voir dire that her nephew had been "sentenced to thirty days in the county jail by the defendant (sitting as a municipal judge)." *Id.* at 389. The juror stated that she was not prejudiced against the defendant, and this court did not question her honesty on that point. *Id.* at 390. Nevertheless, we held that the juror's nondisclosure "raise[d] a serious doubt as to whether the defendant had a fair trial." *Id.* at 389.

Treating the issue as one of first impression, we concluded that a "juror who misrepresents or conceals material and relevant matters is guilty of misconduct, and it may be prejudicial to either or both parties because it impairs the right to challenge for cause or peremptorily." *Id.* at 390. We further held "that it was not

11

necessary to decide whether the information withheld would have warranted a challenge for cause." *Id.* Instead, we decided the case broadly, holding that a trial court abuses its discretion by denying a motion for a new trial "[w]here a person serves on a jury who, if not excused for cause, would certainly have been peremptorily challenged if certain questions on *voir dire* had been answered truthfully." *Id.* at 392.

Following *Simmons*, the Court of Appeals considered issues of juror nondisclosure in several cases, sometimes holding that a new trial was required. *E.g.*, *Smith v. Kent*, 11 Wn. App. 439, 449, 523 P.2d 446 (1974). However, the Court of Appeals also correctly recognized situations in which a new trial was not required, for instance, because "the error was occasioned by the ambiguity of the question posed by the defense," rather than the juror withholding responsive information. *State v. Mounsey*, 31 Wn. App. 511, 518, 643 P.2d 892 (1982).

In 1989, this court revisited the issue of juror nondisclosure in *Robinson*, a civil case in which the plaintiff was a California resident. 113 Wn.2d at 156. One of the jurors failed to disclose their bias against people from California who file lawsuits. *Id.* at 157. This court rejected the defendant's claim that this information "inhere[d] in the jury's verdict" and held on the merits that the plaintiff was entitled to a new trial. *Id.* at 160. Although the juror nondisclosure in *Robinson* related to actual bias, and therefore would have supported a for-cause challenge,

12

we recited the applicable law broadly. Consistently with *Simmons*, we stated that a juror commits "'disqualifying jury misconduct'" if they do not answer truthfully "'to a material question that either (1) conceals or misrepresents [their] bias or prejudice, or (2) prevents the intelligent exercise by a litigant of [their] right to exercise a peremptory challenge or [their] right to challenge a juror for cause.'" *Id.* at 159 (quoting *Smith*, 11 Wn. App. at 443).

This court has never explicitly disavowed the broad standard set forth in *Simmons* and *Robinson*. However, we appeared to depart from that standard in the later cases of *Lord* and *Elmore*.

2.  *Lord* and *Elmore* indicate that a new trial is required only if the nondisclosure would have supported a challenge for cause

In 1994, we decided *Lord*, which addressed a personal restraint petition (PRP) in a capital case. 123 Wn.2d 296. One of the petitioner's many claims was that a juror failed to disclose his prior knowledge of the case in voir dire. The petitioner contended that this was "reversible error, if a truthful response would have provided a basis for a challenge for cause or otherwise denied a party a fair trial." Pers. Restraint Pet. & Auth., *In re Pers. Restraint of Lord*, No. 60000-7, at 384 (Wash. Feb. 10, 1993). This court held that the affidavit offered to prove this claim was hearsay, but we added in dicta that "[a]ny misleading or false answers during voir dire require reversal only if accurate answers would have provided grounds for a challenge for cause." *Lord*, 123 Wn.2d at 313. The parties did not

13

*State v. Lupastean*, No. 99850-7

raise *Simmons*, *Robinson*, or the intelligent exercise of peremptory challenges, and the court did not mention them.

Similarly, in 2007, *Elmore* addressed another PRP in a different capital case. 162 Wn.2d 236. The petitioner there contended that a juror had omitted material information in voir dire and argued that "the simple fact that the juror chose to respond falsely and to mislead court and counsel is itself indicative of an impermissible bias." Pers. Restraint Pet. & Br. in Supp., *In re Pers. Restraint of Elmore*, No. 70233-1, at 162 (Wash. June 6, 2002). We held that Elmore's claim was "without merit" because "Elmore cannot demonstrate that the [juror's] answers would have supported a challenge for cause." *Elmore*, 162 Wn.2d at 266, 269. As in *Lord*, neither the parties nor the court addressed *Simmons*, *Robinson*, or peremptory challenges.

Thus, *Lord* and *Elmore* did not explicitly disavow *Simmons* and *Robinson*. Moreover, neither case implicitly overruled *Simmons* and *Robinson* sub silentio. "Where we have expressed a clear rule of law . . . we will not—and should not— overrule it sub silentio. To do so does an injustice to parties who rely on this court to provide clear rules of law." *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 280, 208 P.3d 1092 (2009) (citation omitted) (citing *State v. Studd*, 137 Wn.2d 533, 548, 973 P.2d 1049 (1999)). Therefore, a "later holding overrules a prior holding sub silentio when it directly contradicts the earlier rule of law." *Id.*

14

*State v. Lupastean*, No. 99850-7

*Lord* and *Elmore* did not directly contradict *Robinson* and *Simmons* regarding a claim that a juror's nondisclosure prevented a party from intelligently exercising their peremptory challenges. They could not have done so because no such claim was raised in *Lord* or *Elmore*. Moreover, *Simmons* and *Robinson* addressed timely raised motions for new trials based on juror nondisclosure, while *Lord* and *Elmore* addressed alleged nondisclosures that were raised for the first time on collateral review, years after the verdicts.

As a result, we have never rejected *Simmons* or *Robinson*, either explicitly or implicitly. Nevertheless, there is a clear tension between those cases and our later decisions in *Lord* and *Elmore* that we have never resolved.

3. The Court of Appeals has developed its own line of precedent based on the lead opinion in *McDonough*

The final point of tension in Washington law regarding juror nondisclosure is the manner in which the Court of Appeals has addressed the issue. Beginning in the late 1980s, the Court of Appeals stopped applying *Simmons* and *Robinson* and began following the lead opinion from *McDonough*, 464 U.S. 548, believing "that there is 'no persuasive reason why the courts of Washington would not'" do so. *State v. Briggs*, 55 Wn. App. 44, 50, 776 P.2d 1347 (1989) (quoting record); *see also Hill v. GTE Directories Sales Corp.*, 71 Wn. App. 132, 141, 856 P.2d 746 (1993); *Tigano*, 63 Wn. App. at 342-44; *State v. Rempel*, 53 Wn. App. 799, 803,

15

*State v. Lupastean*, No. 99850-7

770 P.2d 1058 (1989), *rev'd on other grounds*, 114 Wn.2d 77, 785 P.2d 1134 (1990).

McDonough* was a plurality decision by the United States Supreme Court. Its lead opinion would have prohibited federal courts from granting a new trial based on a juror's failure to disclose material information in voir dire unless (1) the "juror failed to answer honestly" and (2) "a correct response would have provided a valid basis for a challenge for cause." 464 U.S. at 556 (Rehnquist, J., lead opinion). This test was based on an analogy to Federal Rule of Civil Procedure 61, and is therefore not binding on Washington courts. *Id.* at 553. Nevertheless, the Court of Appeals embraced *McDonough*'s lead opinion in multiple cases, one of which supplied the basis for the district court's decision here. *See* CP at 95 (quoting *Tigano*, 63 Wn. App. at 342).

It was not until 2001 that the Court of Appeals explicitly acknowledged that *McDonough*'s lead opinion was contrary to this court's opinions in *Simmons* and *Robinson*. *State v. Cho*, 108 Wn. App. 315, 321-24, 30 P.3d 496 (2001). However, the court believed that *Simmons* and *Robinson* were no longer good law because "the issue of the proper standard arose again in the Supreme Court, albeit briefly, in *In re Personal Restraint of Lord*." *Id.* at 323 (citing 123 Wn.2d 296). The Court of Appeals "conclude[d] from the reference in *Lord* that our Supreme Court, like this court, now relies on the *McDonough* standard." *Id.* Applying

16

*McDonough*'s lead opinion, the court in *Cho* reversed and remanded for an evidentiary hearing as to whether a prospective juror had "concealed his past employment as a police officer in order to be seated on the jury," giving rise to "the presumption of bias." *Id.* at 329.

*Cho*'s conclusion that *Lord* implicitly overruled *Simmons* and *Robinson* was incorrect, as discussed above. Nevertheless, no party sought review, and the defendant was convicted again after a new trial. *State v. Cho*, noted at 122 Wn. App. 1024, 2004 WL 1559784, at *2. Since 2001, the Court of Appeals has consistently followed *Cho* and, by extension, *McDonough*'s lead opinion. *See, e.g.*, *Lupastean*, No. 37394-1-III, slip op. at 28-29; *State v. Perez*, 166 Wn. App. 55, 67-68, 269 P.3d 372 (2012); *In re Det. of Broten*, 130 Wn. App. 326, 337-39, 122 P.3d 942 (2005). Our 2007 opinion in *Elmore* implied that this was the correct course of action. 162 Wn.2d at 268.

Thus, there is significant tension in Washington law as to what standard applies when a party requests a mistrial or new trial on the basis that a juror failed to disclose information during the jury selection process. We must now resolve it.

C.  The legal underpinnings of *Simmons* and *Robinson* have disappeared, and their broad language must be disavowed

Our 1962 decision in *Simmons* held that a juror's failure to disclose information in voir dire requires a new trial if the undisclosed information hindered a party's ability to intelligently exercise their peremptory challenges, even if the

17

party cannot show prejudice to the outcome of their trial. Although *Robinson* repeated this holding in 1989, it did not substantively consider whether *Simmons*'s approach remained viable in light of intervening legal developments. Doing so now, we must conclude that the broad rule announced in *Simmons* and repeated in *Robinson* is inconsistent with current Washington law. We therefore disavow those decisions and hold that in order to obtain a new trial based on juror nondisclosure, the moving party must show prejudice to their right to a fair trial.

    1.      The law governing peremptory challenges has changed drastically since *Simmons* and *Robinson*

In considering the legal underpinnings of *Simmons* and *Robinson*, we first look to the standards that apply to peremptory challenges generally and how those standards have evolved in the past 60 years. At the time of *Simmons*, peremptory challenges were considered to be of preeminent importance, requiring heightened protections and special remedies. Today, peremptory challenges are properly viewed as merely one rule-based component of the trial process, which must be limited by courts and may be eliminated altogether.

"The peremptory challenge has very old credentials." *Swain v. Alabama*, 380 U.S. 202, 212, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965), *overruled on other grounds by Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). It "was first created in England to serve purposes that are now irrelevant and outdated." *Saintcalle*, 178 Wn.2d at 75 (González, J., concurring). "In theory,

*State v. Lupastean*, No. 99850-7

peremptory challenges are supposed to further the goal of an impartial jury," although in practice, "litigants simply use peremptory challenges to remove the prospective jurors they perceive to be least favorable to their position." *Id.* at 79-80. For much of this country's history, courts widely agreed that "[t]he essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." *Swain*, 380 U.S. at 220.

Peremptory challenges were authorized "by Washington's first territorial legislature over 150 years ago." *Saintcalle*, 178 Wn.2d at 52 (Wiggins, J., lead opinion). At the time, peremptory challenges could not be used to discriminate on the basis of race or sex, but only because "racial minorities and women were completely ineligible for jury service." *Id.* at 75 (González, J., concurring).

Approximately 30 years later, the United States Supreme Court recognized "that the State denies a [B]lack defendant equal protection of the laws when it puts [them] on trial before a jury from which members of [their] race have been purposefully excluded." *Batson*, 476 U.S. at 85 (citing *Strauder v. West Virginia*, 100 U.S. (10 Otto) 303, 25 L. Ed. 664 (1880)); *see* U.S. Const. amend. XIV. However, that decision addressed "a state statute qualifying only white people for jury duty." *Swain*, 380 U.S. at 203. It did not apply to the discriminatory use of peremptory challenges.

19

*State v. Lupastean*, No. 99850-7

It was not until 1965, three years after we decided *Simmons*, that the United States Supreme Court recognized for the first time that a party might be able to raise a viable equal protection claim based on the State's use of peremptory challenges against prospective jurors of color. In *Swain*, the Court considered an allegation that there was a "systematic practice" in which "prosecutors have consistently and systematically exercised their strikes to prevent any and all Negroes[2] on petit jury venires from serving." *Id.* at 223. It was contended that such a practice "is invidious discrimination." *Id.*

The Court agreed that "[i]n these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purposes of the peremptory challenge are being perverted." *Id.* at 223-24. Nevertheless, the Court determined, "[W]e cannot hold that the striking of Negroes in a *particular case* is a denial of equal protection of the laws," reasoning that this "would entail a radical change in the nature and operation of the [peremptory] challenge." *Id.* at 221-22 (emphasis added).

Thus, at the time *Simmons* was decided, courts believed that maintaining the historically unrestricted practice of peremptory challenges was vitally important; so important, in fact, that it outweighed the constitutional rights of criminal

---

[2] We retain this language from the original opinion both to demonstrate the degree to which the relevant law has changed and to avoid the dangerous practice of whitewashing our legal history.

defendants. It is therefore unsurprising that *Simmons* relied on then current authority holding that "[t]he denial of the right of peremptory challenge is the denial of a substantial right. When it is not waived by conduct, it is prejudicial *per se* and harmful," without requiring any "affirmative showing that the denial of [the] right to peremptory challenge had resulted in prejudice." *Wright v. Bernstein*, 23 N.J. 284, 295, 129 A.2d 19 (1957), *cited in Simmons*, 59 Wn.2d at 392.

Approximately 25 years after *Simmons* was decided, the United States Supreme Court revisited "the evidentiary burden [*Swain*] placed on a criminal defendant who claims that [they have] been denied equal protection through the State's use of peremptory challenges." *Batson*, 476 U.S. at 82. *Batson* recognized that "[r]acial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try" but also "the excluded juror" and "the entire community." *Id.* at 87. The *Batson* Court also acknowledged that although *Swain* had "sought to accommodate the prosecutor's historical privilege of peremptory challenge free of judicial control and the constitutional prohibition on exclusion of persons from jury service on account of race," it had imposed "a crippling burden of proof." *Id.* at 91-92 (citation omitted). As a result, "prosecutors' peremptory challenges [were] largely immune from constitutional scrutiny." *Id.* at 92-93.

*State v. Lupastean*, No. 99850-7

In an attempt to right this wrong, *Batson* rejected *Swain* and held that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Id.* at 96. The Court also set forth the now-familiar, three-step *Batson* framework:

> First, the person challenging the peremptory strike must "make out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Batson*, 476 U.S. at 93-94. Second, "the burden shifts to the State to come forward with a [race]-neutral explanation" for the challenge. *Id.* at 97. Third, "the trial court then [has] the duty to determine if the defendant has established purposeful discrimination." *Id.* at 98. If the trial court finds purposeful discrimination, the challenge should be granted and the peremptory strike disallowed.

*Saintcalle*, 178 Wn.2d at 42 (Wiggins, J., lead opinion) (alterations in original) (footnote omitted).

Thus, shortly before this court decided *Robinson*, the United States Supreme Court had recognized "that the Constitution does not guarantee a right to peremptory challenges" and had made strides toward recognizing that the exercise of peremptory challenges in individual cases must be subject to limitations. *Batson*, 476 U.S. at 98. Nevertheless, the *Batson* majority held that the "historic trial practice" of peremptory challenges should be maintained because "[w]e have no reason to believe that prosecutors will not fulfill their duty to exercise their challenges only for legitimate purposes." *Id.* at 99 n.22.

22

A powerful concurrence by Justice Marshall disagreed, warning that "[t]he decision today will not end the racial discrimination that peremptories inject into the jury-selection process." *Id.* at 102-03 (Marshall, J., concurring). This prediction proved correct. "*Batson* has done very little to make juries more diverse or prevent prosecutors from exercising race-based challenges." *Saintcalle*, 178 Wn.2d at 44 (Wiggins, J., lead opinion). By the 2010s, the question had become not whether *Batson* was effective, but what courts should do in response to its undisputed ineffectiveness.

Some jurists believe that "it is time to abolish peremptory challenges" because "the use of peremptory challenges contributes to the historical and ongoing underrepresentation of minority groups on juries, imposes substantial administrative and litigation costs, results in less effective juries, and unfairly amplifies resource disparity among litigants—all without substantiated benefits." *Id.* at 69-70 (González, J., concurring); *see also Jefferson*, 192 Wn.2d at 252-53 (Yu, J., concurring); *Batson*, 476 U.S. at 103 (Marshall, J., concurring). Others "believe that such a major change in trial procedure should be tested in the furnace of advocacy at the trial and appellate levels" and may ultimately do more harm than good. *Saintcalle*, 178 Wn.2d at 52 (Wiggins, J., lead opinion). However, one issue has been resolved beyond debate: "*Batson* has failed to eliminate race

23

*State v. Lupastean*, No. 99850-7

discrimination in jury selection." *Jefferson*, 192 Wn.2d at 240 (Gordon McCloud, J., lead opinion).

As a result, Washington recently expanded its efforts "to eliminate the unfair exclusion of potential jurors based on race or ethnicity" beyond what is required by federal law. GR 37(a). In "all jury trials" in Washington, any party or the court "may object to the use of a peremptory challenge to raise the issue of improper bias." *Id.* at GR 37(b), (c). Once such an objection is raised, "the party exercising the peremptory challenge shall articulate the reasons" for doing so, and the court must determine whether "an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge." *Id.* at GR 37(d), (e). Unlike *Batson*, "[t]he court need not find purposeful discrimination to deny the peremptory challenge" pursuant to GR 37. *Id.* at GR 37(e).

As the above history demonstrates, the law governing peremptory challenges has changed significantly since *Simmons* was decided in 1962. At that time, the "very old credentials" of peremptory challenges meant that the nonconstitutional right to exercise peremptory challenges overshadowed the constitutional rights of criminal defendants and prospective jurors of color. *Swain*, 380 U.S. at 212. Now, we recognize that peremptory challenges "are but one state-created means to the constitutional end of an impartial jury and a fair trial," which may be restricted or "withheld altogether without impairing the constitutional guarantee of an impartial

24

jury and a fair trial." *Georgia v. McCollum*, 505 U.S. 42, 57, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992). Moreover, Washington has recognized that peremptory challenges *must* be restricted beyond the minimal federal requirements of *Batson*.

Thus, as a matter of independent state law, it can no longer be said that the "peremptory challenge is a necessary part of trial by jury" nor that "the challenge is 'one of the most important of the rights secured to the accused.'" *Contra Swain*, 380 U.S. at 219 (quoting *Pointer v. United States*, 151 U.S. 396, 408, 14 S. Ct. 410, 38 L. Ed. 208 (1894)). As a result, the legal underpinnings of *Simmons* regarding the primary importance of peremptory challenges have disappeared.

2. The law regarding mistrials and new trials has changed significantly since we decided *Simmons*

In addition to relying on the then prevailing view of peremptory challenges, our 1962 decision in *Simmons* also relied on the then prevailing view of when a new trial may or must be granted. Over the intervening 60 years, an entire body of law has been developed in Washington, in other states, and in federal courts, which deeply undermines the analysis and holding of *Simmons*.

*Simmons* predates every modern court rule governing motions for new trials in Washington cases. The criminal rules for superior court were first adopted in 1973, over a decade after *Simmons* was decided. 4A ELIZABETH A. TURNER, WASHINGTON PRACTICE: RULES PRACTICE CrR 7.5 author's cmts. at 578 (8th ed. 2020). Similarly, rules for civil cases in superior court were first adopted in 1967.

25

4 ELIZABETH A. TURNER, WASHINGTON PRACTICE: RULES PRACTICE CR 59

author's cmts. at 627 (7th ed. 2021). And the applicable civil and criminal rules

for courts of limited jurisdiction were not adopted until the mid-1980s. 4B

ELIZABETH A. TURNER, WASHINGTON PRACTICE: RULES PRACTICE CRLJ 59

author's cmts. at 475, CrRLJ 7.5 author's cmts. at 751 (8th ed. 2020).

CrRLJ 7.5(a) now provides that a court may grant a new trial "when it

affirmatively appears that a substantial right of the defendant was materially

affected." *Cf.* CrR 7.5(a); CR 59(a); CRLJ 59(a). This rule recognizes that

> [t]he granting of a new trial by the trial judge involves the relationship
> and function of three entities: (1) the trial judge, (2) the jury, and (3)
> the appellate courts. A fine balance must be struck so that any one
> entity does not unduly usurp the functions of either of the other two,
> while still giving each sufficient latitude to fulfill its own legitimate
> function.

*State v. Williams*, 96 Wn.2d 215, 222, 634 P.2d 868 (1981) (analyzing former CrR

7.6 (1973), renumbered as CrR 7.5 in 2000). With modern court rules governing

new trials, "a limit is imposed on the discretion of trial courts and at the same time

a framework for appellate review of the trial court's action is provided." *Id.*

Although aspects of this framework were certainly being developed in case law

before the court rules were formally adopted, *Simmons* was not constrained by the

clear limits imposed by the plain language of our modern rules.

Perhaps more significant than the adoption of formal court rules is the fact

that *Simmons* predates much of the applicable precedent concerning new trials and

26

appellate review. Indeed, around the time of *Simmons*, this court was engaged in an ongoing effort to answer the "question of whether the flaws in the record are of sufficient moment to mark the trial as unfair." *State v. Green*, 71 Wn.2d 372, 373, 428 P.2d 540 (1967). To do so, we had to develop a body of law distinguishing between (1) structural error, which is "'so intrinsically harmful as to require automatic reversal,'" (2) constitutional error, for which "prejudice is presumed and the State bears the burden of proving [the error] was harmless beyond a reasonable doubt," and (3) nonconstitutional error, which is not presumptively prejudicial and "requires reversal only if, within reasonable probabilities, it materially affected the outcome of the trial." *State v. Coristine*, 177 Wn.2d 370, 380, 300 P.3d 400 (2013) (quoting *Neder v. United States*, 527 U.S. 1, 7, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)); *State v. Russell*, 125 Wn.2d 24, 94, 882 P.2d 747 (1994). This area of law was in its infancy at the time of *Simmons*.

By the late 1960s, the federal government and "[a]ll 50 States [had] harmless-error statutes or rules." *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Nevertheless, the harmless error standard had yet to be fully developed, as it represented a departure from the historical "doctrine of presumed prejudice from the commission of error, which was first announced in that most technical of courts, the Court of Exchequer, about 1835, and later adopted by other English courts and by the courts of most of the American states."

27

Edson R. Sunderland, *The Problem of Appellate Review*, 5 TEX. L. REV. 126, 147 (1926). Although the doctrine of presumed prejudice "was abolished in England by the Judicature Act" of 1873, "[i]n this country we have been much slower in attacking this paralyzing rule." *Id.*

One lingering example of presumed prejudice at the time of *Simmons* was United States Supreme Court precedent holding that "[t]he denial or impairment of the right [to exercise peremptory challenges] is reversible error without a showing of prejudice." *Swain*, 380 U.S. at 219. Similar views persisted for many years, in both federal and Washington courts. *See State v. Vreen*, 143 Wn.2d 923, 929-30, 26 P.3d 236 (2001) (collecting federal cases), *abrogated on other grounds by Rivera v. Illinois*, 556 U.S. 148, 129 S. Ct. 1446, 173 L. Ed. 2d 320 (2009). As recently as 2001, this court broadly stated that an "erroneous denial of a litigant's peremptory challenge cannot be harmless when the objectionable juror actually deliberates." *Id.* at 932. The Court of Appeals took the same view. *See State v. Bird*, 136 Wn. App. 127, 133-34, 148 P.3d 1058 (2006); *State v. Evans*, 100 Wn. App. 757, 774, 998 P.2d 373 (2000).

Given the then prevailing view that the denial of a peremptory challenge is structural error, it made sense for *Simmons* to hold that a new trial is required where a juror's nondisclosure prevents a party from intelligently exercising their peremptory challenges. 59 Wn.2d at 392. In such a situation, there would be no

reason to allow the trial to continue because the verdict would be subject to automatic reversal on appeal. However, that is no longer the case.

First, the New Jersey Supreme Court revisited its opinion in *Wright*, which *Simmons* had relied on as a "particularly" persuasive opinion with "an excellent discussion of the rationale of the rule." *Id.* The New Jersey Supreme Court recognized that *Wright* broadly "spoke in terms of defendant's loss of the right to excuse the juror peremptorily." *State v. Williams*, 113 N.J. 393, 442, 550 A.2d 1172 (1988). Nevertheless, in 1988, the court held that *Wright* "is better understood as turning on the fact that a potentially biased juror was allowed to sit on the jury." *Id.* Therefore, the seminal case underlying the broad holding of *Simmons* has been significantly limited.

Next, the United States Supreme Court recognized in 2000, "albeit in dicta, 'that the oft-quoted language in *Swain* [stating that any impairment of peremptory challenges is structural error] was not only unnecessary to the decision in that case . . . but was founded on a series of our early cases decided long before the adoption of harmless-error review.'" *Rivera*, 556 U.S. at 160 (second alteration in original) (quoting *United States v. Martinez-Salazar*, 528 U.S. 304, 317 n.4, 120 S. Ct. 774, 145 L. Ed. 2d 792 (2000)). And in 2009, the Court reiterated "that there is no freestanding constitutional right to peremptory challenges" and explicitly rejected the argument that "the deprivation of a state-provided

29

*State v. Lupastean*, No. 99850-7

peremptory challenge requires reversal as a matter of federal law." *Id.* at 157, 160.

Thus, although the prevailing view at the time of *Simmons* was that loss of a

peremptory challenge is structural error, the United States Supreme Court has now

firmly rejected this view.

Finally, in 2018, this court recognized that our holding in *Vreen*, indicating

that the loss of a peremptory challenge is structural error, was "more limited" than

its broad language suggested. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300,

310, 422 P.3d 458 (2018). We reasoned that the issue presented in *Vreen* was not

merely related to the rule-based right to peremptory challenges. Instead, the issue

in *Vreen* was "constitutional" in nature "because it involved a *Batson* challenge"

by the State, which resulted in the erroneous denial of one of the defendant's

peremptory challenges. *Id.*; *see Vreen*, 143 Wn.2d at 925-27. Moreover, we

recognized that *Vreen* and similar decisions by the Court of Appeals had "adopted

reasoning from a Ninth Circuit [Court of Appeals] decision, *Annigoni*, that has

since been overruled by the United States Supreme Court in *Rivera*, 556 U.S. at

160." *Meredith*, 191 Wn.2d at 311 (citing *United States v. Annigoni*, 96 F.3d 1132,

1144 (9th Cir. 1996)). As a result, we held that nonconstitutional error resulting in

the loss of a peremptory challenge "is not a type of structural error that requires

automatic reversal" on appeal. *Id.* at 303.

*State v. Lupastean*, No. 99850-7

In sum, given the transformative legal developments that have occurred over the last 60 years, it is clear that *Simmons* and *Robinson* are inconsistent with current Washington law. Peremptory challenges are no longer widely viewed as a vital component of jury trials that must be freely exercised by parties without restriction by the courts. To the contrary, Washington has set strict limits on the exercise of peremptory challenges to ensure that they promote, rather than inhibit, the exercise of fundamental constitutional rights.

Moreover, the law regarding new trials and reversal on appeal has changed significantly since *Simmons*. Under current standards, "[a] mistrial should be granted when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." *Gamble*, 168 Wn.2d at 177. Similarly, an appellant seeking reversal based on a nonconstitutional error must show that the error "materially affected the outcome of the trial." *Russell*, 125 Wn.2d at 94. There is no longer a presumption of prejudice for nonconstitutional errors, and there is no longer any basis to elevate peremptory challenges over other nonconstitutional trial rights.

Thus, "the legal underpinnings of our precedent have changed or disappeared altogether." *W.G. Clark Constr. Co.*, 180 Wn.2d at 66. We now explicitly disavow the broad holding announced in *Simmons* and repeated in *Robinson*. If a juror fails to disclose requested information in the jury selection

31

process, a motion for a mistrial or new trial may not be granted solely because the undisclosed information might have triggered a peremptory challenge. Instead, as for other nonconstitutional trial errors, the moving party must show that the juror's nondisclosure was prejudicial to the party's right to a fair trial.

We do not purport to set forth in this case an exclusive list of how the necessary showing may be made. Nevertheless, we can provide some clear examples. A juror's failure to disclose information that is properly and understandably requested during jury selection will certainly require a new trial if the undisclosed information reveals the juror's actual or implied bias. This is true regardless of whether the juror's failure to disclose was intentional because "'[a] trial by a jury, one or more of whose members are biased or prejudiced, is not a constitutional trial.'" *State v. Berhe*, 193 Wn.2d 647, 658, 444 P.3d 1172 (2019) (alteration in original) (internal quotation marks omitted) (quoting *City of Seattle v. Jackson*, 70 Wn.2d 733, 738, 425 P.2d 385 (1967)).

In addition, a timely raised motion for a new trial must be granted where a juror intentionally fails to disclose information that "would have provided a valid basis for a challenge for cause." *Elmore*, 162 Wn.2d at 267. Moreover, "in exceptional cases the courts will draw a conclusive presumption of implied bias from the juror's factual circumstances," including "when a prospective juror deliberately withholds information during voir dire in order to increase the

32

*State v. Lupastean*, No. 99850-7

likelihood of being seated on the jury." *Cho*, 108 Wn. App. at 325. And "[w]hen a juror withholds material information during voir dire and then later injects that information into deliberations, the court must inquire into the prejudicial effect of the combined, as well as the individual, aspects of the juror's misconduct." *Briggs*, 55 Wn. App. at 53.

We reiterate that these examples are not meant to provide an exhaustive list of the circumstances in which a juror's failure to disclose requested information during the jury selection process will require a new trial. The underlying inquiry is whether the moving party "has been so prejudiced that nothing short of a new trial can insure that [they] will be tried fairly." *Gamble*, 168 Wn.2d at 177. On appeal, "denial of a motion for mistrial should be overturned only when there is a substantial likelihood that the prejudice affected the verdict." *Id.*

D.     The trial court did not abuse its discretion in denying Lupastean's motion for a mistrial in this case

With the above principles in mind, we turn to Lupastean's contention that juror 6 committed misconduct by failing to disclose in voir dire that her husband had a car accident with an unlicensed driver. We hold that Lupastean is not entitled to a new trial.

We may assume without deciding that the juror's nondisclosure affected Lupastean's ability to intelligently exercise his peremptory challenges because, as discussed above, this alone is not sufficient to warrant a new trial. We also accept

33

*State v. Lupastean*, No. 99850-7

as a verity the trial court's unchallenged finding that the juror's nondisclosure was unintentional, so we may not presume juror 6 had an implied bias based solely on her failure to disclose. There is also no indication that juror 6 relayed the details of her husband's accident to the other jurors during deliberations.

The only other potential basis for reversal is Lupastean's contention that juror 6 "should have been dismissed due to actual or implied bias." Pet. for Review at 7. Rather than adequately brief the issue to this court, Lupastean has attempted to incorporate his Court of Appeals briefing by reference. *See* Suppl. Br. of Pet'r at 30. In general, "[w]e do not address issues based solely on incorporated arguments." *State v. Sublett*, 176 Wn.2d 58, 68 n.2, 292 P.3d 715 (2012) (C. Johnson, J., lead opinion); *see also* RAP 10.3(a)(6) (appellate briefs must include "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record"). Nevertheless, we briefly address Lupastean's claim that juror 6 was biased.

Lupastean contends that "[j]uror No. 6 clearly had some degree of resentment that her husband was faulted for the actions of the unlicensed driver" and further contends that "she should have been excused after her husband sought representation by [defense counsel,] which created the beginnings of an attorney-client relationship." Opening Br. of Pet'r at 18-19 (Wash. Ct. App. No. 37394-1-III (2020)). The Court of Appeals properly rejected these contentions.

34

*State v. Lupastean*, No. 99850-7

To disqualify juror 6 due to actual bias, Lupastean had the burden to show "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). The trial court ruled he did not meet this burden. CP at 95. On the record presented, Lupastean has not shown this was an abuse of discretion. The incidents, though similar in some respects, were quite different, as Lupastean was accused of recklessly driving a commercial truck without a valid CDL, whereas juror 6's husband was hit by an unlicensed driver in a passenger car. Therefore, like the Court of Appeals, "[w]e defer to the trial court's finding because the trial court is in the best position to observe a juror's testimony and determine whether [they] may try a case impartially." *Lupastean*, No. 37394-1-III, slip op. at 11.

Lupastean's claim of implied bias appears to be based on an allegation that is analogous, but not identical, to RCW 4.44.180(2), which provides that a "challenge for implied bias may be taken" where a juror and a party "[s]tand[ ] in the relation of . . . attorney and client." Lupastean acknowledges that juror 6's husband's attempt to seek defense counsel's legal advice is "not literally implied bias under RCW 4.44.180(2)," but he nevertheless argues that this fact pattern

35

"essentially fits the purposes behind disqualification for implied bias." Reply Br. of Pet'r at 8 (Wash. Ct. App. No. 37394-1-III (2020)). We disagree.

It is certainly true, as Lupastean contends, that implied bias is not limited to "the strict language of the implied bias statute" because there is a "Sixth Amendment doctrine of implied bias," which exists entirely apart from the statute. *Id.* at 7; *State v. Boiko*, 138 Wn. App. 256, 260-61, 156 P.3d 934 (2007). However, "[t]his doctrine applies only in certain exceptional circumstances." *Boiko*, 138 Wn. App. at 261. We cannot say that the trial court abused its discretion in failing to find exceptional circumstances here.

Lupastean does not show that juror 6 should have been disqualified for actual or implied bias, and he does not otherwise show that the juror's nondisclosure prejudiced his right to a fair trial. His motion for a mistrial was therefore properly denied. Nevertheless, we caution that trial courts have a responsibility to ensure that the parties have adequate opportunity to explore jurors' potential biases in voir dire. Although the loss of a peremptory challenge does not, in itself, deprive a person of their right to a fair trial, it may damage a person's perception that their rights were adequately protected. Moreover, trial courts have discretion to consider remedies and trial management practices other than granting a new trial, and we encourage them to do so.

*State v. Lupastean*, No. 99850-7

Courts have the discretion to seat alternate jurors and should do so where possible. CrR 6.5; CR 47(b); CrRLJ 6.5; CRLJ 38(e). In many instances of alleged juror misconduct, a simple and adequate remedy could be had by replacing the juror. *See State v. Guloy*, 104 Wn.2d 412, 430, 705 P.2d 1182 (1985) (trial court properly replaced juror who committed misconduct, rather than declaring a mistrial). This remedy protects both judicial economy and the moving party's perception that they were tried fairly.

In addition, voir dire should be conducted in a manner that encourages potential jurors to speak up. Where possible, courts should consider questioning the jurors individually, instead of expecting them to volunteer information when the entire jury panel is questioned as a group. The questions posed must be clear to laypersons, and the questions must not require jurors to make legal judgments, such as whether two different cases are sufficiently similar to warrant discussion. Jurors should also be instructed to respond if they are at all unsure, rather than being instructed to respond only if they would answer "yes or probably," as occurred here. CP at 47. Finally, courts should explore options for follow-up questioning beyond merely asking the juror if they can set their feelings aside and try the case fairly. Such a question clearly implies that the answer should be yes, and many people would likely be uncomfortable admitting to a judge and a group of strangers from the local community that they cannot be fair.

37

*State v. Lupastean*, No. 99850-7

CONCLUSION

In sum, we disavow the broad rule stated in *Simmons* and *Robinson* and hold that a mistrial or new trial is not required solely because a juror's nondisclosure in voir dire prevented a party from intelligently exercising their peremptory challenges. Instead, the party seeking a new trial must make an affirmative showing that the nondisclosure caused actual prejudice to their right to a fair trial. This showing may be made where the undisclosed information reveals that the juror was biased, where an intentional nondisclosure would support a challenge for cause, where the circumstances of the nondisclosure give rise to a conclusive presumption of implied bias, or under other circumstances showing prejudice to the moving party. Lupastean has not made the necessary showing here. We therefore affirm his convictions.

*State v. Lupastean*, No. 99850-7

_____
Yu, J.

WE CONCUR:

_____
González, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Montoya-Lewis, J.

_____
Owens, J.

39

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

No. 99850-7

GORDON McCLOUD, J. (dissenting)—In *State v. Simmons*, this court held

that a trial court must grant a motion for new trial when a juror's failure to disclose

relevant, material information deprives the defendant of the ability to "intelligently

exercise the right to interpose a peremptory challenge." 59 Wn.2d 381, 391, 368

P.2d 378 (1962). In *Robinson v. Safeway Stores, Inc.*, 113 Wn.2d 154, 155, 776

P.2d 676 (1989), we reaffirmed that holding. As the majority acknowledges, we

have never overruled or disavowed either of those decisions. And neither party in

this case asks us to overrule them today (although the State incorrectly assumes

that we already have).

The majority nevertheless concludes that the rationale underlying the right to

peremptory challenges has changed so drastically since *Simmons* and *Robinson*

that no reasons remain to follow the holdings of those cases. The majority reaches

this conclusion in part by asserting that our holding in *Simmons* elevated the

deprivation of the intelligent exercise of peremptory challenges to the level of

structural error requiring automatic reversal. I disagree: both *Simmons* and

*Robinson* require the defendant to show that the error is *material* to obtain reversal.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Although there is no constitutional right to peremptory challenges, and although our cases and rules on peremptory challenges have developed in the years since *Simmons* was decided, we continue to recognize that the right to exercise peremptory challenges constitutes an important tool to secure the constitutional right to an impartial jury.

Because *Robinson* and *Simmons* remain good law, I would apply them here. I would overrule the line of Court of Appeals cases that decline to follow our controlling precedent. And, applying those rules to this case, I would conclude that juror 6's failure to disclose material information upon direct questioning during voir dire deprived Cristian Lupastean of the right to intelligently exercise a peremptory challenge. I would therefore grant him a new trial.

The majority concludes to the contrary. I therefore respectfully dissent.

FACTS AND PROCEDURAL HISTORY

I agree with the majority's recitation of the facts. Majority at 4-7. To briefly summarize, Lupastean was charged with first degree driving while license suspended, driving a commercial vehicle without a commercial driver's license, and reckless driving. At voir dire, the court asked the prospective jurors, "Do any of you have a close friend or relative who has had experience with a similar or related type of case or incident? And that would be as a victim, witness, or

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

accused." Clerk's Papers (CP) at 49. Several jurors raised their hands and were questioned further. *Id.* Juror 6 did not raise her hand. Questioning continued, the parties exercised their for-cause and peremptory challenges, and a six-person jury was sworn with no alternates. *Id* at 49-76. After swearing in the jury, the court took a brief recess. *Id.* at 83.

Prior to opening statements and outside the jury's presence, defense counsel informed the court that juror 6's husband had approached him during the recess and asked if he was an attorney. *Id*. at 84. Juror 6's husband began talking about "an incident that he had been involved in with regards to getting hit by an unlicensed driver in an accident." *Id*. The court brought juror 6 back in for further questioning. *Id.* at 85. When asked, juror 6 said that she had not responded to the court's general voir dire question about similar accidents "since they didn't go to court and he just got a ticket, I don't know, I assumed it would be okay." *Id*. at 87. But she agreed that the accidents were "the same" when directly asked by defense counsel. *Id*. at 87-88. She also stated, "[W]hen he was asking that question I was thinking behind my head. I go, well, it didn't go to court, my husband didn't get a ticket. I assumed it would be okay, but I thought in my mind." *Id*. at 88. The State then asked juror 6, "[I]t didn't seem similar to you, is that why you didn't raise it with us?" *Id*. at 89. Juror 6 agreed with the prosecutor's statement that her

3

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

husband's accident "didn't involve a truck, or reckless driving, or anything like that." *Id*.

After juror 6 left the room, defense counsel moved to disqualify her and requested a mistrial. *Id*. at 90. The State opposed. *Id*. at 91. The court found that juror 6 "was not deliberately untruthful to try and get herself seated on this jury," and that "it doesn't sound like that's affecting her ability to be fair and impartial." *Id*. at 95. The court denied the motion, stating, "'Information known during voir dire but not revealed upon request will be prejudicial if it is material and would have provided the objective basis needed to challenge for cause. It will not be prejudicial if no more is shown than that it might have affected how a party subjectively decided to exercise peremptory challenges.' . . . So, based on the case law and those findings, I'm going to deny the motion for new trial." *Id*. at 95-96 (quoting *State v. Tigano*, 63 Wn. App. 336, 342, 818 P.2d 1369 (1991)).

Lupastean was convicted as charged, and the superior court affirmed. *Id*. at 3-5, 229. On discretionary review, the Court of Appeals affirmed in an unpublished opinion. *State v. Lupastean*, No. 37394-1-III (Wash. Ct. App. May 6, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/373941_unp.pdf.

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

I.  We should follow our precedent in *Simmons* and *Robinson* and overrule the conflicting line of Court of Appeals cases

The courts below applied the Court of Appeals' decision in *Tigano* to hold that "Information known during voir dire but not revealed upon request will be prejudicial if it is material and would have provided the objective basis needed to challenge for cause. It will not be prejudicial if no more is shown than that it might have affected how a party subjectively decided to exercise peremptory challenges." CP at 95; *Lupastean*, slip op. at 24.  The majority acknowledges that this line of Court of Appeals decisions conflicts with our court's controlling precedent upholding the right to a new trial based on juror nondisclosure that affects a party's right to intelligently exercise a peremptory challenge. Majority at 16. But the majority chooses to depart from that controlling precedent, on the ground that its legal underpinnings have eroded.  *Id.* at 17. The majority reaches that conclusion by reading *Simmons* as adopting a structural error analysis in this context. *Id.* at 3, 20. As discussed below, that reading is incorrect. *Simmons* and *Robinson* contain a materiality requirement and their legal underpinnings remain compelling.

5

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

> A. *Simmons* and *Robinson* require the defendant to show actual prejudice to the right to exercise a peremptory challenge in order to obtain a new trial, and we have never overruled those decisions

The majority asserts that *Simmons* elevated the deprivation of the exercise of peremptory challenges to the level of structural error requiring automatic reversal. I disagree. *Simmons* limited its holding to cases in which a juror conceals or misrepresents *material*, *relevant* information that prevents a party from *intelligently* exercising the right to peremptory challenges. These limitations operate as a built-in prejudice requirement: they bar relief unless the concealed information would have prejudiced a party's right to exercise a peremptory challenge.

This is clear from the language of the *Simmons* decision itself.  In that case, a traffic court judge was charged with assault with intent to commit rape. 59 Wn.2d at 382. During voir dire, defense counsel asked whether any juror had a family member who had ever appeared before Judge Simmons. *Id.* at 391. One juror did not answer, even though she knew that Judge Simmons had recently sentenced her nephew to 30 days in jail and imposed a $235 fine. *Id.* at 389. That juror was seated on the jury, and the jury convicted. *Id.* at 391.

We reversed. We explained that voir dire has two purposes: "[t]o ascertain whether there is a basis for a challenge for cause; and to ascertain whether it is

6

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

wise and expedient to exercise the right of peremptory challenge." *Id.* at 390. We said that a juror commits misconduct if they "misrepresent[] or conceal[] material and relevant matters" during voir dire. *Id.* We continued that it is "not necessary to decide whether the information withheld would have warranted a challenge for cause"—instead, a new trial should be granted "if the information sought by the question was relevant and material for the purpose of enabling the appellant to intelligently exercise the right to interpose a peremptory challenge." *Id.* at 390-91. We also stated that "[w]here a person serves on a jury who, if not excused for cause, would *certainly* have been peremptorily challenged if certain questions on *voir dire* had been answered truthfully," the trial court errs when it denies a motion for a new trial. *Id.* at 392 (emphasis added).  Applying those standards, we reversed the conviction because the trial court abused its discretion in denying the defendant's motion for a new trial.

But contrary to the majority's assertion, *Simmons* did not elevate the deprivation of the right to exercise a peremptory challenge to the level of structural error. Majority at 3. "Structural error is a special category of constitutional error that 'affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself,'" and where structural error has occurred, a defendant is not "'required to prove specific prejudice in order to obtain relief.'"

7

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

*State v. Wise*, 176 Wn.2d 1, 13-14, 288 P.3d 1113 (2012) (alteration in original)

(quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d

302 (1991); *Waller v. Georgia*, 467 U.S. 39, 49, 104 S. Ct. 2210, 81 L. Ed. 2d 31

(1984)). Instead, structural error is "'so intrinsically harmful as to require

automatic reversal.'" *State v. Coristine*, 177 Wn.2d 370, 380, 300 P.3d 400 (2013)

(quoting *Neder v. United States*, 527 U.S. 1, 7, 119 S. Ct. 1827, 144 L. Ed. 2d 35

(1999)).

Simmons does not hold that the right to exercise peremptory challenges is of

constitutional magnitude. It does not hold that a juror's failure to disclose *any*

information is so intrinsically harmful that it automatically entitles a defendant to a

new trial without a showing of prejudice, either. Instead, *Simmons* holds that a

juror's failure to disclose information rises to the level of misconduct only when

that undisclosed information is "material and relevant." And to obtain relief, the

nondisclosure of that "material and relevant" information must also impact the

party's right to "intelligently exercise" the right to peremptory challenge. A new

trial is required only where the relevant, material undisclosed information would

"certainly" have prompted a peremptory challenge.[1]

---

[1] To be sure, at the time *Simmons* was decided, the United States Supreme Court still adhered to the view that "[t]he denial or impairment of the right [to exercise

8

State v. Lupastean (Cristian), No. 99850-7
(Gordon McCloud, J., dissenting)

That's not a structural error test.

Our decision in *Robinson* reaffirmed *Simmons*—and it did not elevate the deprivation of the right to exercise a peremptory challenge to the level of structural error, either. In *Robinson*, the plaintiff was a California resident suing for damages after she was injured in a grocery store. 113 Wn.2d at 155. During voir dire, her lawyer asked whether any potential jurors had been involved in any lawsuits and "whether or not the fact that the plaintiff and her witnesses were California residents would affect their ability to be fair." *Id.* at 156 (citing trial court's findings of fact 1). One potential juror, who went on to become jury foreman, failed to disclose that he had been involved in a lawsuit brought by a California resident against him for damages following a car accident. *Id.* During jury deliberations, the foreman made several comments expressing his belief that Californians "'sue anyone they can get money from.'" *Id* (quoting trial court's findings of fact 3).

---

peremptory challenges] is reversible error without a showing of prejudice." *Swain v. Alabama*, 380 U.S. 202, 212, 219, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965), *overruled on other grounds by Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). And some of the cases *Simmons* cited with approval had equally broad holdings. 59 Wn.2d at 392 (discussing *Wright v. Bernstein*, 23 N.J. 284, 295, 129 A.2d 19 (1957)). But *Simmons* actually adopted a narrower holding—one that included a materiality requirement.

9

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

This court held that the trial court properly granted a new trial based on juror misconduct under CR 59(a). *Id.* at 155, 158. We reiterated that "'[t]he right of trial by jury means a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct. That misconduct may consist of a prospective juror's false answer to a material question that either (1) conceals or misrepresents his bias or prejudice, or (2) prevents the intelligent exercise by a litigant of his right to exercise a peremptory challenge or his right to challenge a juror for cause.'" *Id.* at 159 (quoting *Smith v. Kent*, 11 Wn. App. 439, 443, 523 P.2d 446 (1974)). And we held that "'[i]t is jury misconduct warranting a new trial for a juror to give a false answer on a material matter during voir dire examination that conceals information properly requested by a litigant to enable him to determine whether or not to excuse the prospective juror by peremptory challenge.'" *Id.* at 160 (quoting *Smith*, 11 Wn. App. at 444). As in *Simmons*, the *Robinson* court required the moving party to show that the nondisclosed information was "material."[2] *Id.* at 159; *see also Smith*, 11 Wn. App. at 445 ("An answer concerns a material matter if, for

---

[2] The State contends that since "a truthful response from the juror would have supplied a valid basis for a challenge for cause," everything *Robinson* said about peremptory challenges was dicta. Suppl. Br. of Resp't at 16. But *Robinson*'s holding was based on the deprivation of the right to exercise a peremptory challenge. The mere fact that the court *could have* made a holding on a different basis cannot change *Robinson*'s actual holding.

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

example, had the litigant known the truth of the matter, he could *reasonably* be

expected to exercise a peremptory challenge." (emphasis added) (citing *Simmons*,

59 Wn.2d at 381)). Importantly, the undisclosed information must have been

"'properly requested.'" *Robinson*, 113 Wn.2d at 160 (quoting *Smith*, 11 Wn. App.

at 444). A new trial is not warranted if "the error was occasioned by the ambiguity

of the question posed by the defense." *State v. Mounsey*, 31 Wn. App. 511, 518,

643 P.2d 892 (1982) (applying *Simmons*).

The built-in prejudice requirement established by *Simmons* and reaffirmed

by *Robinson* is no outlier. We apply the same sort of built-in prejudice

requirement in other contexts. For example, to establish ineffective assistance of

counsel in violation of the Sixth Amendment, the defendant must show (1)

deficient performance that (2) resulted in prejudice. *Strickland v. Washington*, 466

U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); U.S. CONST. amend VI.

The prejudice requirement inheres in what it means for counsel to be "ineffective."

No further showing of prejudice is required, even to obtain relief in a postappeal,

collateral challenge. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 280 P.3d

1102 (2012).

Likewise, to prove that a lawyer's conflict of interest violated the Sixth

Amendment, a defendant must show that "an actual conflict of interest adversely

11

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.

Ct. 1708, 64 L. Ed. 2d 333 (1980). "[A] defendant who shows that a conflict of

interest *actually affected* the adequacy of his representation need not demonstrate

prejudice in order to obtain relief" because the prejudice requirement inheres in

what it means for a lawyer to have an "actual conflict of interest." *Id.* at 349-50

(emphasis added); *see also United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct.

3375, 87 L. Ed. 2d 481 (1985) (plurality portion) (no additional showing of

prejudice required to establish *Brady*[3] claim because elements of claim are that (1)

the prosecution suppressed (2) materially favorable evidence, and evidence is

material "only if there is a reasonable probability that, had the evidence been

disclosed to the defense, the result of the proceeding would have been different").

Like these tests, the *Simmons* test contains a built-in prejudice requirement.

To establish a claim under *Simmons,* the defendant must show that (1) a juror's

omission or concealment of "material" and "relevant" information (2) "certainly"

resulted in the loss of the defendant's ability to "intelligently" exercise a

peremptory challenge. 59 Wn.2d at 390-91. These four quoted key words indicate

that prejudice is required. "Material" information is information that is relevant to

---

[3] *Brady v. Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

the issues in the case. *Id*. Irrelevant information does not provide a basis for an "intelligent" exercise of a peremptory challenge. The use of the word "certainly" further indicates that the loss of the ability to exercise the peremptory challenge must not be hypothetical or remote. Read together, *Simmons* imposed a test that requires a defendant to show actual prejudice to their right to exercise a peremptory challenge.

    B. Contrary to the majority's assertion, the underpinnings of the *Simmons*/*Robinson* rule remain compelling and do not justify abandoning our precedent—especially where neither party asks us to do so

I agree with the majority's discussion of *Lord*[4] and *Elmore*[5] and its conclusion that neither of those decisions, nor any other one of our decisions, have overruled *Simmons* or *Robinson*, "either explicitly or implicitly." Majority at 15. Because neither *Lord* nor *Elmore* addressed the issue of the intelligent exercise of peremptory challenges, I do not see "a clear tension," *id.*, between those cases and the holdings in *Simmons* and *Robinson*. Instead, the confusion in this area of law arises from the fact that beginning in the 1980s, the Court of Appeals began issuing

---

[4] *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 313, 868 P.2d 835 (1994).

[5] *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 266-69, 172 P. 3d 335 (2007).

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

its own line of decisions that conflict with this court's controlling precedent in

*Simmons* and *Robinson. See id.* at 15-17.

I would resolve this tension by overruling the conflicting Court of Appeals

decisions. But the majority concludes instead that we should overrule *Simmons* and

*Robinson* because their legal underpinnings "'"have changed or disappeared

altogether"'"—even though neither party asks us to do so. *Id.* at 3 (quoting *W.G.*

*Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54, 66, 322

P.3d 1207 (2014)).

The majority ably describes how the law on peremptory challenges has

developed in the years since *Simmons* was decided. *Id.* at 18. While the United

States Supreme Court has long acknowledged that "there is nothing in the

Constitution of the United States which requires the Congress [or the states] to

grant peremptory challenges," it has always emphasized the "very old credentials"

of the practice and had also held (pre-*Fulminante*) that "[t]he denial or impairment

of the right is reversible error without a showing of prejudice." *Swain v. Alabama*,

380 U.S. 202, 244, 212, 219, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965), *overruled on*

*other grounds by Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d

69 (1986).

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

Since then, the United States Supreme Court has recognized much greater limitations on the right to peremptory challenges and has disavowed the broad language of cases like *Swain*. The Court has held that [b]ecause peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution," and that therefore such denial is *not* structural error requiring reversal without a showing of prejudice. *Rivera v. Illinois*, 556 U.S. 148, 158, 129 S. Ct. 1446, 173 L. Ed. 2d 320 (2009). The Court has also clarified that the equal protection clause of the Fourteenth Amendment bars the use of race-based peremptory challenges. *Batson*, 476 U.S. 79; U.S. CONST. amend. XIV. And this court has adopted GR 37, which provides more robust protection than the *Batson* test against race-based peremptory challenges.

But I disagree with the majority that these developments in the law have undermined or eradicated the compelling principles underpinning the right to peremptory challenges that support the robust protection *Simmons* provides.

Peremptories serve an important function as a "state-created means to the constitutional end of an impartial jury and a fair trial" in several ways. *Georgia v. McCollum*, 505 U.S. 42, 57, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992); *see also State v. Saintcalle*, 178 Wn.2d 34, 62, 309 P.3d 326 (2013) (Madsen, C. J.,

15

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

concurring), *abrogated on other grounds by City of Seattle v. Erickson,* 188 Wn.2d 721, 398 P.3d 1124 (2017); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 143, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994) (a party has a "legitimate interest in using [peremptory] challenges in its effort to secure a fair and impartial jury"). Particularly in criminal trials, where a defendant is involuntarily haled into court and must defend against the full power of the State, peremptory challenges serve a legitimizing function: they "honor the demand that the parties be given a say in who exercises coercive government power over them." Ela A. Leshem, *Jury Selection as Election: A New Framework for Peremptory Strikes*, 128 YALE L.J. 2356, 2395 (2019). "This say renders the trial's coercive power over the party that has been involuntarily haled into court more legitimate than it otherwise would be." *Id*. at 2358. As we continue to develop our for-cause challenge jurisprudence, peremptories remain especially important since they also provide a "check on the judge's decision about a for-cause challenge. If the lawyer disagrees with the judge's decision she can use peremptory to remove the juror in question. Without the peremptory, the lawyer would have no alternative but to go through the entire trial, and then raise the issue on appeal. With the peremptory, the lawyer can still remove that juror and be satisfied that the jury is one that will hear the case fairly."

16

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

Nancy S. Marder, *Justice Stevens, the Peremptory Challenge, and the Jury*, 74

FORDHAM L. REV. 1683, 1691-92 (2006).

Courts have the duty to ensure the "intelligent exercise" of peremptory

challenges based on accurate information. CrRLJ 6.4(b); CrR 6.4(b). Although

peremptory challenges have been used in constitutionally impermissible ways,

courts can minimize such occurrences with proper safeguards. One means of

promoting the intelligent, constitutionally permissible use of peremptory

challenges is GR 37, which provides that a court must disallow a peremptory

challenge if "an objective observer could view race or ethnicity as a factor." GR

37(e). Another is provided by *Robinson* and *Simmons*, which explicitly recognize

"the importance of being able to use [peremptory challenges] intelligently,"

particularly in criminal cases. *Simmons*, 59 Wn.2d at 392. By providing robust

protections for the intelligent use of peremptory challenges, *Robinson* and

*Simmons* encourage courts and litigants to conduct a thorough voir dire, and

discourage peremptory challenges based on misinformation and ill-informed

stereotypes.

Our court rules still provide the important right to exercise peremptory

challenges. We should therefore retain the rule in *Simmons*, which incentivizes

clear and thorough voir dire, protects the right to a fair jury, and, alongside court

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

rules like GR 37, furthers this court's commitment to eradicating bias in the justice system.

I would therefore follow *Simmons* and hold that if a party is deprived of the important right to intelligently exercise a peremptory challenge because a juror fails to disclose relevant, material information during voir dire, then that party is entitled to a new trial. I would overrule the line of Court of Appeals decisions to the contrary.

II.     Lupastean is entitled to a new trial based on juror nondisclosure

The district court believed that it lacked discretion to grant Lupastean's motion for a mistrial. CP at 95-96. This was incorrect as a matter of law, and therefore an abuse of discretion.

The undisclosed information—that juror 6's husband had recently been the victim of a car accident with an unlicensed driver, and that juror 6 believed the other driver was at fault—was highly relevant and material to this case.  The reason is that Lupastean, like the unlicensed driver whom juror 6 believes was at fault, was charged with being an unlicensed driver who was at fault:  he was charged with reckless driving and driving without a license. Disclosure of that information would certainly have prompted follow-up. The trial court itself acknowledged that "the problem is that that information arguably could affect the

18

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

decision on whether to do a peremptory challenge or challenge for cause. Defense did use up all his challenges, but if he was aware of that, he might have used his challenge on a different person." CP at 93. And defense counsel's comments strongly suggest that he would have exercised a peremptory challenge, if not a challenge for cause.[6]

This was not a case where an ambiguous question resulted in a juror's nondisclosure. *Cf. Mounsey*, 31 Wn. App. at 518. Juror 6 admitted that her husband's car accident came to mind when the court asked about similar incidents, but that she chose not to answer. CP at 88. Moreover, Lupastean immediately brought the issue to the court's attention when he learned of juror 6's nondisclosure, before the parties had even presented opening statements. *Id.* at 91.

---

[6] Defense counsel stated:

> The question is not whether or not she can be fair at this point; it's whether or not her failure to disclose that, when asked the question. And the basic reason why we ask those questions is to ferret out whether or not not only the people think that they can be fair, but whether my client thinks that they could be fair, and I, as his attorney, can be fair. Without having the opportunity to take a look at the whole panel and have the information that her husband was in an accident a month ago with an unlicensed driver, and this charge here is a driving without license, reckless driving charge, it interferes with his basic due process rights. So, I would ask that you disqualify her and declare a mistrial.

CP at 90-91.

*State v. Lupastean (Cristian)*, No. 99850-7
(Gordon McCloud, J., dissenting)

Finally, since no alternate jurors had been selected, there was no other remedy but a mistrial that could ensure Lupastean received a fair trial.

Juror 6's failure to disclose relevant, material information that was directly responsive to a question on voir dire deprived Lupastean of the right to intelligently exercise a peremptory challenge. Under *Simmons* and *Robinson*, Lupastean is entitled to a new trial.

CONCLUSION

*Simmons* and *Robinson* remain good law. I would apply them to this case. I would hold that Lupastean is entitled to a new trial because juror 6's nondisclosure of relevant, material information upon request during voir dire deprived him of his right to intelligently exercise a peremptory challenge that he certainly would have exercised. I would overrule the line of Court of Appeals decisions that conflict with *Simmons* and *Robinson.*

_____
Gordon McCloud, J.

_____
Madsen, J.

_____
Whitener, J.